Corley, &c., v. Lancaster.

---

CASE 29—ORDINARY—MAY 19, 1883.

## Corley, &c., v. Lancaster.

APPEAL FROM MARION CIRCUIT COURT.

1. There are public nuisances that produce injury to many persons, or, indeed, all the public; they are also private, because, at the same time, they produce a special and particular injury to private rights.
2. Although the nuisance complained of be public in its nature, if the plaintiff alleges and shows special injury to himself, he may maintain his action, although other individuals have also suffered injury from the same cause.

3. Appellants are not estopped by their consent to the building of the dam which proved to be a nuisance, unless it be shown that he consented thereto, knowing, or having reason to believe, that a nuisance was to be the result.

4. The written contracts proposed, but not signed, were not relevant to the issue, but, as appellant introduced one, it was proper for appellee to introduce the other.

ROUNTREE & LISLE AND RUSSELL & AVRITT FOR APPELLANT.

1. Although a nuisance be public in its character and effect, yet, if an individual suffers injury therefrom in any manner peculiar to himself, or differently from others, he has his right of action.

2. There is a broad distinction between the original erection of a structure that a party consenting thereto knows will result in a nuisance and where one consents to a structure as a measure of relief while the wrong is being done to him. (Wood on Nuisances, 577; Lead Co. Appeal, Am. Law Rep., Oct., 1881; Commonwealth v. Ashbrook, 1 Bush, 139; Addison on Cont., 12; 2 Bush, 182; 5 J. J. Mar., 564; 9 Bush, 23; Herman on Estoppel, 354; Crowe v. Brown, Sneed's Rep., 102.)

R. J. BROWNE & C. S. HILL FOR APPELLEE.

1. All the proof shows, that if there be a nuisance at all, it is common to the entire neighborhood, and not special to appellants.

2. For any of those acts which are in their nature public nuisances, no individual is entitled to an action unless he sustain some extraordinary or particular damage not common to others.

3. Appellant admits the building of the rock wall, and agreed to give the rock therefor. He is estopped to complain of any injury resulting therefrom. (Cosby v. Owensboro and Russellville Railroad Co., 10 Bush, 292; 74 N. C., 471; 76 N. Y., 413; 14 Bush, 357; Civil Code, sec. 598; Louisville Coffin Co. v. Warren, 78 Ky., 403; St. Helen Smelting Co. v. Tiffany, 4 Am. Law Rep.; Woods on Nuisances, 4; 11 Richardson S. C. Rep., 214; Pennsylvania Lead Co. Appeal No. 1, Am. Law Rep., Oct., 1881; 30 N. Y., 593; 4 Minor's Inst., part 1, p. 1.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellants to recover damages on account of the alleged creation and continuance by appellee of a nuisance.

It appears that in 1874 appellee erected about 250 yards from the residence of appellants, and on the opposite side

of a stream called Hardin's creek, in Marion county, a large distillery; and that he operated his distillery and fed large numbers of animals, confined under the sheds constructed for the purpose, from five to seven months each year, from that time until the commencement of this action.

The residence of appellants, husband and wife, is situated upon a farm of near 100 acres, belonging to the wife, in front of which for several hundred yards flows the creek.

It is alleged by appellants that the deposits from the animals, and other offensive matter produced by the distillery, have been by appellee permitted to run into the creek, poisoning and rendering impure the water thereof that previously flowed pure into and over the lands of appellants, whereby it has become unfit for use of man or beast, or to gather ice from, which they previously used it for. And that the decaying matter produced in the manner mentioned has rendered the air so foul and offensive as to cause appellants and their family to become sick, and often to vomit while taking their meals; and in consequence of the alleged nuisance, the value of their land as a place of abode has been greatly lessened.

Appellee, in his answer, denies that the water of the creek has been rendered unfit for use, or the air made offensive, or that appellants have been damaged to any extent by reason of the alleged nuisance. And further answering, he states that if there has been any damage to appellants, which he denies, "the same was caused by the suggestion and instance of plaintiff, Anderson Corley, and he also prevented the removal of said cause of bad air."

Upon the trial the jury returned a verdict for the defendant in the action, and judgment having been rendered in accordance with it, this appeal is prosecuted.

At the close of the evidence offered at the trial by appellants, a motion was made by appellee for a peremptory instruction, but it was overruled.

The ground upon which the motion was made, and upon which counsel for appellee now contends that the judgment should be affirmed, is, that the evidence showed that, whatever nuisance existed, if any, was common to the whole neighborhood, and not special to appellants, and, consequently, they have no right to recover in this action, having failed to allege and prove special damages; and in support of his position, cites the case of Cosby, &c., v. The Owensboro & R. R. R. Co., 10 Bush, 288, where this language is used: "Private individuals, seeking relief against a public nuisance, must show that they suffer an injury distinct from that suffered by the general public, and that said injury is one that the public, in the promotion of the general interest, has not the right to inflict upon them without compensation."

The nuisance complained of in the case referred to was created by the construction of a railroad upon the public street of a city, and the court held "that the entry by the railroad company being an entry upon the possession of the public, the right of action to abate the nuisance, if one existed, was in the municipal authorities representing the local public immediately interested in the street so occupied." But even in that case the right of individuals to such relief against a public nuisance, where the injury is distinct from that suffered by the general public, was recognized.

There may be nuisances "public in that they produce injury to many persons or all the public, and private because, at the same time, they produce a special and particular in-

jury to private rights, which subjects the wrong-doer to indictment by the public, and to damages at the suit of persons injured." (Wood on Nuisances, page 22.)

In such a case an individual may maintain an action, though the nuisance complained of be public in its nature, if he alleges and shows special injury to himself, notwithstanding it appears that other individuals have also suffered injury from the same cause.

It does appear in this case that other persons suffered injury from the alleged nuisance, but that is not a sufficient reason to deprive appellants of their right to maintain this action, if it be true that the water of the creek has been injured, and the air they breathe has been poisoned and corrupted by the act of appellees, whereby the enjoyment of their property has been rendered essentially uncomfortable and inconvenient.

We perceive nothing in the situation or location of the distillery and cattle-pens of appellee that authorizes, in this case, an exception to or relaxation of the rule that every one should so use his own as not to injure others, and therefore if appellants have suffered special and tangible injury therefrom, they have a remedy unaffected by the fact that others have been likewise injured.

Numerous errors have been assigned by appellants, all of which we do not deem it necessary to notice.

They allege in their petition that the water of the creek has been so corrupted as to render it unfit for stock to drink, or to gather ice from. By instruction No. 4, of which they complain, the jury are simply told that they must find for the defendant in the action, unless they believe such was the condition of the water.

By instruction No. 6 the jury are told, in substance, that the right of appellees to use the creek to carry off the offal is conditioned upon it being so used as not to injure appellants.

Considered, as they should be, in connection with other instructions given, neither instruction No. 4 or No. 6 is objectionable.

Instruction No. 5 is as follows: "Although the jury may believe from the evidence that there was an unusually bad smell from the cess-pool, caused by the rock dam having been built, yet if Corley advised or consented to the making of said dam, the plaintiffs cannot recover in this action on account of such bad smell."

It appears that in 1876, or about that time, in order to prevent the flow of offal and other offensive matter into the creek, appellee erected a stone dam upon his own land across a slough that extended from the distillery building to the creek, so that, instead of going into the creek, the matter was retained by the dam and formed a cess-pool, the effluvia from which principally caused the offensive odor complained of by appellants. As applicable to this state of case, and upon the hypothesis that appellant, Anderson Corley advised and consented to the building of the dam the jury were instructed that appellants could not recover on account of the bad smell caused thereby.

Even assuming that it is sufficiently pleaded and proved that Corley did advise and consent to the building of the dam, still appellants are not estopped thereby, unless it be shown that he gave such advice and consent, knowing, or having reason to suppose, that the dam when erected would be a nuisance; the rule in such cases being that, in order to constitute an estoppel, "the acts of the party affected by

the nuisance must have been such as to make any attempt on his part to stop the nuisance, or recover damages therefrom, a positive fraud." (Wood on Nuisances, section 798, and authorities cited.)

Appellants were entitled to immunity from injury as well to the air as to the water of the creek, and before they can be estopped, by reason of advice and consent given for the erection of the dam in order to preserve the water pure, it must appear that they are "fairly chargeable with notice" that the results of building it would be to poison and corrupt the air as has been done. In our opinion, therefore, instruction No. 5 should not have been given without such qualification.

As there was no allegation in the petition that appellee caused dead animals to be placed in the creek, evidence in regard thereto was properly excluded.

The written contracts, respectively proposed but not agreed to or signed by appellants and appellee, in regard to the erection of a dam across the creek in order to wash out the cess-pool, do not illustrate the issues involved in this case. But as appellants first offered in evidence the one proposed by them, it was not error to permit the other to go to the jury.

But for the error indicated the judgment must be reversed, and cause remanded, with directions to grant appellants a new trial, and for other proceedings consistent with this opinion.