CASE 87—PETITIONS EQUITY—FEBRUARY 9.

## Dulaney v. Louisville & Nashville R. R. Co. &c.

### Norton v. Same.

### Erdman v. Same.

APPEALS FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. RAILROADS—TRACKS ALONG STREETS—ABUTTING PROPERTY OWNERS.—No private right of the owner of abutting unimproved property is invaded by the building and maintenance of double railroad tracks along the street, upon which the property abuts, where sufficient room is left on either side of the double tracks for the usual travel, and the owner's right of ingress and egress is not unreasonably obstructed or seriously impaired.

In this case thirteen or fourteen feet on either side of the double tracks, after allowing for the pavements, was considered sufficient.

2. ADDITIONAL SERVITUDE—UNAUTHORIZED ENTRY—NUISANCE—INJUNCTION.—The construction of a railroad to be operated by steam on a public street is not a new servitude or burden on the

Dulaney v. Louisville & Nashville R. Co. &c.

use to which the street was originally dedicated; and where the entry is made without legislative authority, for the purpose of constructing the railroad, the entry is on the possession of the public, and is a public nuisance, to be abated by the public authorities; and when no private rights are invaded, can not be enjoined by the abutting property owner.

3. CHARTER CONSTRUCTION.—Where the charter of a railway transfer company authorized it to acquire the right of way, construct and operate through a city any branch roads connecting with other railroads terminating in the city, or connecting therewith by bridge or ferry, "for the accommodation of the commercial and manufacturing business of the city," and the line selected is the most direct and natural line of connection, there was legislative warrant for the occupancy of the streets on the line.

4. APPEAL FROM JUDGMENT ENTERED, NUNC PRO TUNC.—Where the opinion of a chancellor was handed down, officially signed and made part of the record, in March, 1883, and it was discovered ten years later that the order in accordance with the opinion had not been formally entered, a *nunc pro tunc* order giving effect to the opinion was properly entered; and it appearing that the parties to the suit regarded the opinion as final and as the end of the litigation, it was no longer possible, after the entry of the *nunc pro tunc* order, to appeal from the original judgment.

JOHN W. BARR, JR., PIRTLE & TRABUE, SIMRALL, BODLEY & DOOLAN, AND HUMPHREY & DAVIE FOR APPELLANTS.

1. The appeal granted in the Dulaney case on October 18, 1893, from the judgment entered August 21, 1893, was in time and is a valid appeal, notwithstanding the court below entered the judgment of August 21, 1893, " *nunc pro tunc* as of March 30, 1883." Entering a judgment *nunc pro tunc* does not affect the right of appeal.  Ky. Code, secs. 390, 392, 393, 368, 374; Ky. Stats., sec. 378; Johnson v. Com., 80 Ky., 377; Rubber v. Goodyear, 6 Wallace, 153; Coon v. Grand Lodge, 76 Cal., 254; Rose Estate, 72 Cal., 577; Dickey v. Givens, 41 N. W. Rep., 608; Credit Co. v. Arkansas R., 128 U. S., 258; Polly v. Black River, 113 U. S., 81; Elliott on Appellate Procedure, secs. 118, 119.)

2. The judgment when entered, August, 1893, did not follow the opinion filed in March, 1893, but was something entirely different (which illustrates that the appeal must be from the judgment, and not from the opinion).  (Elliott on Appellate Procedure, sec. 119.)

3. Norton and Erdman, as the vendees and privies of Dulaney, have the right (as this court has heretofore adjudged on various mo-

tions in the case), to prosecute this appeal in the name of Du-
laney, but for their own benefit. (Ky. Code, sec. 734; Ency. of
Pleading and Practice, vol. 2, p. 158; Elliott on Appellate Pro-
cedure, secs. 132, 133, and 137; Ragland v. Wickware, 4 J. J.
Mar., 530; Marr v. Hanna, 7 J. J. Mar., 643.)

4. The ordinance of June, 1882, under which these tracks were laid
and operated, did not give any authority to the L. & N. Rail-
road whatever, but only to the Chesapeake, Ohio & Southwestern
—a rival and competing road; and it did not authorize the con-
nections (now made) between the main tracks of the L. & N.,
but only a connection between the C., O. & S. W. line and the
Louisville Railway Transfer Company (a connection that has
never been made). Burnett's City Code, p. 563; Commonwealth
v. City of Frankfort, 92 Ky., 149.)

5. The "title" of that ordinance only authorized a single track to be
laid; and, under the city charter, so much of the body of the
ordinance as authorized a "double" track was void; as "not
expressed in the title." (Burnett's Code (Louisville), p. 347, sec.
15.)

6. The title of the ordinance only related to the C., O. & S. W.
building and operating the track; and so much of the body of the
ordinance as authorizes any other company, if any, is "not ex-
pressed in its title," and is void. (Burnett's Code, p. 347.)

7. The ordinance only authorized the C., O. & S. W. to build these
tracks on condition that it would give certain bonds, and exe-
cute certain contracts, with the city of Louisville, and perform
other conditions precedent; none of which things have ever been
done; nor has the C., O. & S. W. ever attempted to do anything
whatever under the ordinance; and the L. & N. (which is build-
ing and operating the tracks), was given no rights under the
ordinance. (Burnett's City Code, p. 563.)

8. The claim of the L. & N., that the C., O. & S. W. has transferred
what franchises it obtained under the ordinance, to the L. & N.,
is untenable. Such a transfer would be void in law, even if
proven to have been made. (Commonwealth v. Smith, 87 Am.
Decisions, 672 (10 Allen, 455); Rhorer on Railroads, 439; Thomas
v. R. R. Co., 101 U. S., 71; 130 U. S., 1; 131 U. S., 371; 145 U. S.,
393.)

9. But, even if the ordinance of the city had contained an attempted
grant to the L. & N. R. Co. (instead of to the C., O. & S. W.);
and even if it had authorized a connection over A street between
the L. & N. main tracks and the transfer company's line (in-
stead of only a connection from the C., O. & S. W.'s Cecilia
Branch to the transfer company line); the ordinance would

Dulaney v. Louisville & Nashville R. Co., &c.

have been void; because there was no legislative authority for it. Legislative authority is necessary to authorize a city council to grant the right to operate steam railroads through the streets. (Louisville Railway v. City of Louisville, 8 Bush, 420; Covington Ry. v. Covington, 9 Bush, 127; Ruttle v. City of Covington, 10 Ky. Law Rep., 766; Commonwealth v. City of Frankfort, 92 Ky., 151; Dillon on Municipal Corporations, sec. 705; Cooley's Constitutional Limitations, 676; District v. B. & P. R., 114 U. S., 456; Davis v. E., &c., R., 87 Ga., 605; Daly v. Ga. R., 12 Am. State Reports, 286; Kenton County v. Bank Lick R., 10 Bush, 535; Milhau v. Sharp, 84 Am. Decisions, 314.)

10. None of the legislative acts relied on in the answer of the L. & N. authorize it to construct or operate its railroad through A street. (Ordinance of June, 1882, Burnett's City Code, p. 563; Acts of 1873, vol. 1, p. 248; Acts of 1871, vol. 1, p. 395; Burnett's City Code, p. 800; Acts of 1867, vol. 2, p. 253; Acts of 1867-8, vol. 1, p. 622; Acts of 1881, vol. 1, p. 260; Acts of 1863, p. 541; Elliott's Charter and Ordinances of Louisville, p. 128; Lewis on Eminent Domain, secs. 71, 116, 270; Cooley's Constitutional Limitations, p. 672; Dillon on Municipal Corporations, sec. 705; St. Louis R. v. Halla, 82 Ill., 208.)

11. There being no legislative authority for the L. & N. to use this street for railroad purposes, and its use being, therefore, an unauthorized trespass, nuisance and purpresture, the abutting property owners have the right to an injunction to restrain the construction and the operation of said railroad along said street in front of and over their property. (Cornwall v. L. & N. R., 87 Ky., 77; High on Injunctions, 3d ed., sec. 816; Dillon on Municipal Corporations, 4th ed., sec. 708; Booth's Street Railway Law, secs. 4 and 100; Wood's Railway Law, sec. 335; Lewis on Eminent Domain, sec. 635; Wesson v. Washburn Co., 13 Allen, 103; Higby v. C. & A. R., 19 N. J. Eq., 276; Texarkana R. v. Goldberg, 68 Texas, 685; Pa. R. Appeal, 115 Pa. St. 514; Savannah R. v. Shields, 33 Ga., 601; Cox v. Louisville, &c., R., 48 Ind., 179; Milhau v. Sharp, 84 Am. Decisions, 314.)

12. It is recognized, everywhere, that the operation of a steam railroad track along a street "necessarily damages, and is a special injury to the abutting property owner," unless it is legalized, by legislative authority. (Ruttle v. Covington, 10 Ky. Law Rep., 766; 4 Cushing, 71; 14 Wisconsin, 609; Cooley's Constitutional Limitations, 678; Roberts v. Easton, 19 Ohio St., 78; 26 Minnesota, 11; 89 Missouri, 488.)

13. The case chiefly relied on against us (Owensboro & Nashville R. v. Cosby, 10 Bush, 288) is, as to this point, *dictum* merely; is not

in accordance with the authorities in Kentucky, or elsewhere; and is based upon a wrong interpretation of the cases it cites as its basis—Lexington & Ohio R. v. Applegate, 8th Dana, 289; and Louisville & Frankfort R. v. Brown, &c., 17 Ben. Mon., 763.

14. That case of Owensboro & Nashville v. Cosby, 10 Bush, 288, relied on against us has since been repeatedly disregarded and practically overruled, by this court; in so far as it purports to say that the abutting owner has no right to enjoin an unauthorized steam railroad from operating the street in front of his property. (Cornwall v. L. & N. R., 87 Ky., 77; Ruttle v. City of Covington, 10 Ky. Law Rep., 766; Kreiger v. K. & I. Bridge Co., 93 Ky. 243; Louisville R. v. Hess, 92 Ky., 410; Green v. Asher, 10 Ky. Rep.,. 1006; Corey v. Lancaster, 81 Ky., 174; Owensboro & Nashville R. v. Sutton 12 Ky. Law Rep., 247.)

15. The new corporation law, of April, 1893, also, forbids the construction of a steam railroad along any street, until the right of way shall have been condemned, or until the permission of the adjacent property owners shall have been obtained. (Kentucky Statutes, sec. 768; Colstrum v. Minneapolis R., 33 Minn., 516; Dillon on Municipal Corporations, 4th ed., sec. 720; Elliott on Streets and Roads, pp. 537, 538; Am. & Eng. Ency. of Law, vol. 9, pp. 408, 410; Atchison Street Railway v. Nave, 5 Am. St. Reports, 800; 54 Hun. (N. Y.), 165.)

16. The Indiana rule (relied on by counsel for the L. & N.)—that the plaintiffs have lost their right by permitting the railroad company to get into unlawful possession, and can only sue for damages, has been expressly repudiated in Kentucky. (Louisville, &c., R. v. Hess, 92 Ky., 408; Holloway v. Louisville, &c. R., 92 Ky., 244.)

17. The Louisville & Nashville R. Company having no legislative authority to thus convert A street into a steam railroad line, to the destruction of the value and enjoyment of plaintiff's abutting property; the injunction should go, against such daily and continuous trespasses, nuisance and purpresture by the operation of said road.

HELM & BRUCE FOR APPELLEES.

1. Judgment in Dulaney case was sufficiently entered in 1883 to appeal from; the prayer sought injunction, and this was denied by decision made a part of the record.

2. It was proper to enter judgment *nunc pro tunc*. (Graham v. Lynn, 4 Ben Mon., 17; Davis v. Shaver, 1 Phillips (N. C.), 18; Burnett v. The State, 14 Texas, 455; Parker v. Rugg, 9 Gray, 209; Anderson v. Mitchell, 58 Ind.; Ins. Co. v. Boone, 95 U. S. 117.)

Dulaney v. Louisville & Nashville R. Co., &c.

3. But if this were not true the delay in prosecuting the appeal, and the actual abandonment of the litigation are fatal. (High on Injunction, secs. 7 and 618; Kerr on Injunction, star page 43 and 16 and 348; Encyclopedia of Law, vol. 10, p. 802; Smith v. Clay Ambler, 645 (3 Brown's Chy., 639); Kincaid v. Indpls. Gas Co., 124 Ind., 572 (19 Am. St. Rep., 113); Munsey v. Joest, 74 Ind., 413; Parker v. W. L. C. & W., 2 Black, 552; Pickert v. R. P. R. Co., 25 N. J. Eq., 316; B. & O. R. Co. v. Strauss, 37 Md., 237; Hilliard on Injunctions, p. 24; Great Western R. Co. v. O., W & W. & Co., 3 De Gex M. & G., 358; McAuley v. Western Vermont R. Co., 78 Am. Dec., 629; 33 Vt., 311; Holloway v. L. & St. L. & T. Ry., 92 Ky., 246; M. & E. R. Co. v. Pruden, 20 N. J. Eq., 541.)

4. When more wrong will be done than prevented by granting an injunction it should not be granted. (Encyclopedia of Law, vol. 10, p. 783; Tuttle v. Church, 53 Fed., 422; Hall v. Rood, 40 Mich., 46 (29 Am. Rep., 528); Jones v. City of Newark, 11 N. J. Eq., 456; Highland Avenue Railroad Company v. Birmingham Railroad Co., 93 Ala., 505 (9 Southern Reporter, 570); High on Injunction, sec. 598.)

5. The right to sue is in the public and not in the plaintiffs. (Cosby v. Owensboro, &c., Railroad Company, 10 Bush, 288; Hyland v. Short Route Railway Transfer Company, 10 Ky. Law Rep., 900; Maysville, &c., Turnpike Company v. Ratliff, 85 Ky., 247; Henderson Belt Railroad Company v. Dechamp, 95 Ky., 225.)

The cases of Ruttle v. City of Covington, 10 Ky. Law Rep., 766; Commonwealth v. City of Frankfort, 92 Ky., 149; Cornwall v. L. & N. R. Co., 87 Ky., 72; K. & I. Bridge Company v. Krieger, 91 Ky., 625, and same v. same, 93 Ky., 243, have no application.

In line with the Owensboro case is Zabriskie v. Jersey City, &c., R. Co., 13 N. J. Eq., 314; Morris & Essex R. Co. v. Pruden, 20 N. J. Eq., 530; Hinchman v. Patterson, &c., R. Co., 17 N. J. Eq., 78; Corcoran v. Chicago, &c., R. Co., 37 N. E. Rep., 68; Lorie v. Northern Chicago City Ry. Co., &c., 32 Fed., 270; Fulton v. Short Route Ry. Co., 85 Ky., 653.

6. There was legislative authority for the city of Louisville to enact the ordinance granting A street right of way. (Subsec. 5 of sec. 768 of Ky. Statutes has no application. But see act of February 18, 1873, 1 vol., p. 248; also 1 vol., Acts 1871, p. 395.)

7. It is said that the legislative grant should be construed more strictly against the grantee, but there is another principle, viz.: That he who seeks an injunction against a public work must show his right thereto most clearly, and in order to do so he must show there is no legislative grant. (Connor v. Covington Transfer Co., 14 Ky. Law Rep., 136; Duncan v. Central Passenger R. Co., 85 Ky., 532.)

8. Charters must be construed reasonably, with the view to discovering the legislative intent; and a suicidal interpretation must be avoided. (State v. Newport Street Ry. Co., 18 Atlantic Rep., 161 (16 R. I., 533); Inhabitants of Springfield v. R. Co., 4 Cushing, 63; Morawetz on Private Corporations, sec. 316.)

H. W. BRUCE OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In 1882, the general council of the city of Louisville adopted an ordinance permitting the appellee, the Chesapeake, Ohio and South Western Railroad Company to construct and operate a railroad, with single or double track, along and over "A" street, through the city limits, and provided that all other railroads so desiring might use such tracks upon making proper arrangements therefor with that company. Thereupon the Louisville & Nashville Railroad Co. under a contract with the C., O. & S. W. Co. was about to construct such tracks when the two companies were sued and sought to be enjoined by Dulaney, Downs & Marks, joint owners of lots abutting on "A" street, and who set up that the council had no power to adopt the ordinance; that the construction of the tracks and operation of the road would greatly impair the value of their property and would interfere with the reasonable use of the street. The case was at once prepared, and on final hearing in March, 1883, the chancellor handed down an elaborate opinion, signed officially and made part of the record by an order in which the relief asked was denied. Legislative authority for the ordinance was held to exist, and, moreover, if no such authority in fact existed, it was held that the construction and

operation of the road would be a public nuisance, to be abated by the public authorities unless private rights were invaded, which state of case did ont exist in the opinion of the chancellor.   This ended the litigation, as the plaintiffs determined to prosecute no appeal. According to Dulaney's statement they abandoned the fight.   The track was, thereafter, laid on the street, and was there and in use in 1887, when appellants, Norton & Erdman, bought lots abutting thereon, Erdman buying wholly from Dulaney, and Norton buying in large part from him.

In 1893, it was discovered that no formal entry of an order dismissing the petition of Dulaney, Downs & Marks had been made in accordance with the opinion of the chancellor in 1883.  After notice to the attorneys of the plaintiffs in that suit, counsel for the railroad companies procured a *nunc pro tunc* order carrying into effect the opinion of 1883.   From that order an appeal is now being prosecuted with Dulaney's consent for the benefit of his vendees, Norton & Erdman.   This is the appeal first named above.   The other appeals are from judgments against Erdman & Norton, who brought suits against the two railroad companies in 1893, seeking to enjoin them from the further use and occupancy of street "A," and from laying a double track thereon, which it was alleged was about to be done.   These actions met the same fate, though at the hands of a different chancellor, as the old Dulaney suit.   Hence the appeals of Norton & Erdman.

Passing by for the present the contention of the

appellees that no appeal lies from the judgment in
the Dulaney case, that the vendees of the plaintiff's in
the old suit are bound by the old judgment, and that
in any event the laches and delay of the appellants
must deprive them of the right by injunction to thus
seriously affect the rights of the appellees acquired
under the old judgment after the expenditure of large
sums in constructing not only the tracks but the union
depot at a cost of many thousand dollars, and which
they allege and prove was built chiefly, if not solely,
because of their supposed right to connect their south-
ern with their eastern lines by the short route afforded
by the street in dispute, we come at once to the con-
trolling question in the cases, and that is what are
the rights of the abutting owners in and to this public
street?   It is to be marked in the first place that the
property involved is wholly unimproved and vacant.
It is substantially out in the commons on the southern
limits of the city, and, therefore, we are not called on
to consider any alleged injury arising from the jarring
of walls by passing trains, or damage from smoke or
cinders.   These questions are for the future and may
never arise.   At present they are purely speculative.
Nevertheless, the street may not be so appropriated as
to unreasonably obstruct or seriously impair the
owner's usual mode of ingress or egress to and from
the lots when they may be improved.   It is upon the
expected enjoyment of the right by the owner to freely
use the street that the value of the abutting lots largely
depends.

The proof discloses, and the maps so show, that the street is to be sixty feet in width. What width the sidewalk may be when made is unknown, but from the proof and in the nature of things we should think eight feet would be ample. This would leave some thirteen or fourteen feet on either side of the double track for the usual travel, and would seem to be sufficient.

When the conclusion is reached that no private right, such as we have indicated, is invaded, it is the contention of the appellees that the plaintiff's case is at an end, and that for any invasion of the rights of the public, or any encroachment on the public streets by any unauthorized entry on the possession of the public, the right to interfere and abate the nuisance is in the public authorities. And this contention we shall briefly examine.

It is well settled in many of the states, though in some of them by statutory enactment, that the construction of a railroad, to be operated by steam on a public street, is a new servitude or burden on the use to which the street was originally dedicated; that, therefore, the abutting owner may resist such construction and occupancy until he shall receive adequate compensation for this new use. An exhaustive discussion of this question, with full compilation of the authorities, is found in the recent work of Elliott on Railroads, section 1085, *et seq.*

In Kentucky, however, the rule was settled other, wise, as far back as the Applegate case, decided in

1854 (8 Dana, 301). It was there said: "But even though some persons owning property on the railroad street may be subjected to some inconvenience and even loss by the construction and use of the road, yet if the use made of the road be consistent with the purpose for which the street was established, and also consistent with the just rights of all, such persons have no right either to damages or to an injunction," and the use of the street for such a purpose was recognized as entirely consistent with the purposes for which a street may be properly used. This doctrine was fully recognized and followed in Wolfe v. Cov. & Lex. R. R. Co., 15 B. M., 409; Lou. & Frank. R. R. Co. v. Brown, 17 B. M., 763, and Newport & Cincinnati Bridge Co. v. Foote, &c., 9 Bush, 264.

In the case last cited it was said: "There is no rule of law which gives to the owners of property adjacent to an improvement consequential damages by reason of such improvement when constructed with skill and care, and in such manner as not to interfere with any private right, such as the right to light, air or passway, or by destroying the use or enjoyment of the buildings erected on adjacent land by leaving such a small intervening space between the building and the improvement as to prevent ingress and egress."

In Cosby, &c. v. Owensboro & Russellville R. R. Co., 10 Bush, 291, it was held to be a result of these well-settled principles that the construction and operation of a railroad through the streets of a city or town was not *per se* an encroachment upon the property rights of

abutting lot owners. "For if it was," said the court, "it is plain that neither the municipal authorities nor the legislature, nor both could confer upon a railroad corporation any such right. It would be the taking of private property for public use without compensation, and, therefore, the grant would be violative of the constitution." And it was further said that "private individuals seeking relief against a public nuisance must show that they suffer an injury distinct from that suffered by the general public, and that said injury is one that the public in the promotion of the general interest has not the right to inflict upon them without compensation."

In Fulton, &c. v. Short Route, &c., 85 Ky., 640, the cases were all reviewed, and it was announced as the settled law of the state that an abutting lot owner could not complain of the existence of the railroad on the public street fronting his property, but his complaint was confined to the manner of its construction and operation. See, also, Hyland v. Short Route Transfer Co., 10 Ky. Law Rep., 900, where this doctrine was said to be too well settled in this state to require the citation of authority. We have cited them, however, though hurriedly, because it is insisted by the appellants that the Cosby case is the only one which considered the question of the lot owner's rights, without reference to whether or not there was legislative warrant for the construction of the railroad; and this may be true, but it follows, from the doctrine announced in all the cases, that an encroachment on the street

without warrant is an entry on the possession of the public, and is a public nuisance, to be abated by the public authorities.   Confessedly if such an entry was an invasion of a private right, however slight the interference, the legislature could not authorize it.

The cases supposed to be in conflict with the Cosby case are those in which the street was sought to be wholly appropriated, and where confessedly private rights were about to be invaded, or where the original use of the highway had been abandoned by the public and the fee reverted to the owner.   (Cornwall v. L. & N. R. R. Co., 87 Ky., 77; Ruttle v. City of Covington, 10 Ky. Law Rep., 766; Kreiger v. K.&I. B. Co., 93 Ky., 243; L. & N. R. R. Co. v. Hess, 92 Ky., 410; Green v. Asher, 10 Ky. Law Rep., 1006; Corey v. Lancaster, 81 Ky., 174.) Certainly, in no case in this state has it been held to entitle an abutting owner on vacant and unimproved lots to recover for not merely consequential damages, but those which are wholly speculative and uncertain. However, we are inclined to the opinion that there was legislative as well as municipal warrant for the occupancy of the street in controversy by the railroads.

By the legislative act of 1873 (volume 1, acts 1873, pages 248-253), the Elizabethtown & Paducah Road, now the appellee, the C., O. & S. W., on entering the city of Louisville from the southwest was required to receive freight at East Louisville, and also at the depot at Second and Water streets, to be transported from either of those depots by way of the Louisville Railway Transfer Co. to the Elizabethtown & Paducah Com-

pany's line.   A railway connection was thus required through the city, and it is conceded that the line along "A" street is the most direct and natural line of connection between the points indicated.

It is true that the connection has not been extended beyond the L. & N. tracks to the C., O & S. W.'s line, but the authority to make the connection was clearly intended to be conferred; indeed it was required, and it has been so far made under the supervision and control of the C., O. & S. W.   Moreover, the charter of the Louisville Railway Transfer Co. (the stock in which is alleged to be owned by the L. & N. R. R. Co.) authorized that company to acquire the right of way, construct and operate any branch roads connecting with other railroads terminating at Louisville, or connecting therewith by bridge or ferry, "for the accommodation of the commercial and manufacturing business of the city of Louisville, said city consenting thereto," and might condemn rights of way for such purpose, etc. We think it altogether consistent with the purpose in view in chartering this connecting road, for such was the sole object of its creation, to so construe the language of its charter as to give the right to make such connections as the business interests of the city demanded, using no line of connection, however, except with the consent of the city.

If the present statutes (section 768, Kentucky Statutes) change the rule as to damages to abutting owners, as it seems to do, these cases are not affected thereby.

Upon the principles announced the judgments below dismissing the petitions are to be approved, but it is proper to say that in the Dulaney appeal it seems clear to us that as all the parties to the old suit regarded the opinion of the chancellor as final and as the end of the litigation, the *nunc pro tunc* order was properly entered, and it was no longer possible, in 1893, to prosecute an appeal from the judgment of 1883.

The Dulaney appeal is, therefore, dismissed. In the other cases the judgments are affirmed.