Case 45.—SUIT BY W. P. GILMOUR AGAINST WILLIAM E.
LABRY TO COMPEL HIM TO REMOVE CERTAIN BUILD-
INGS FROM THE STREET.—November 1.

## Labry v. Gilmour.

Appeal from Henderson Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for plaintiff.  Defendant appeals.  Re-
versed.

1. Municipal  Corporations — Streets — Title  of  Municipality—
Leases—The authorities of a municipal corporation hold the
public ways of the city in trust for the public, and a lease
by the city to an individual of the streets or public ways
of the city confers no authority upon the lessee to appro-
priate them to his use.
2. Same—Obstruction of  Street—Injunction—Remedy of  Abut-
ting Owner—Where a structure was erected in a street, the
owner of property on the other side of the street, who had
no title to the land on which the building stood, could not
maintain an injunction for its removal, where he suffered
no damages other than those suffered by the general public.

T. E. and E. C. WARD for appellant.

1. The council had the right to improve, alter or abolish this
street; it certainly includes the right to improve by leasing for
a short term of years.  The right to alter or abolish would in-
clude the right to lease, but the court will observe that the prop-
erty we are dealing with is the river front, not a street.  The
streets are held in trust for the use of the public.  This is the
general property of the city; not necessary to the city's enjoy-
ment of the river; there is a wharf at another point.  It is
just an open piece of ground between the street and the river,
which, by the action of the high water, was put in such a con-
dition that it was not fit for any use, public or private.  And
the city, by getting it improved, stops the encroachment on the
street, paying for this improvement the use of the ground for

ten years and getting a small sum in addition. It was clearly within the right to make this contract.

2. This appellant is not in a good position to ask a court of equity to enforce his legal right, if any he has, to have these buildings removed as obstructions, because he stood by and saw them go up there without protesting to appellant. Not having spoken then, he should not be heard now.

YEAMAN & YEAMAN for appellee.

### POINTS AND AUTHORITIES.

1. The same questions, and the same state of facts were involved in the case of Alves v. Town of Henderson, 16 B. Mon., 159.

2. The authorities of a municipal corporation hold and control the streets and public ways of the city in trust for the use of the public, and the trustees can not sell, or lease, or give away the streets for private use. (Dillon's Mun. Cor., 4th Ed., sec. 660; Barney v. Keokuk, 94 U. S. [4 Otto], 342; Buckner v. Augusta, 1 A. K. Mar., 9; Alves v. Henderson, 16 B. M., 159; Flemingsburg v. Wilson, 1 Bush, 204; Martin v. Louisville, 97 Ky., 30.)

3. A lease by a city to an individual of the streets and public ways for private use confers no authority upon the lessee to appropriate such streets and ways to his private use. (Same authorities cited above.)

4. The remedy of a property owner who is specially improved by purprestures, such as frame buildings in a public street opposite his property, may be by ejectment, but a more appropriate one is by bill in equity. (Carpenter v. Oswego, 24 N. Y., 655; Dillon's Mun. Cor., 4th Ed., sec. 661; Hammar v. Covington, 3 Met., 498.)

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

In 1778 there was granted by Virginia to Richard Henderson & Co. a body of land in Henderson county, Ky., embracing what is now the city of Henderson. In 1797 Henderson & Co. laid out the town of Henderson, including Water street, which runs next to the Ohio river, reserving a strip of ground the whole length of the town, lying between Water street and the river. The streets and strip of ground were dedi-

cated to the use of the public. Between First and Second streets the city paved the strip of ground, and it has been used for wharf purposes; but the city did not improve any other part of the strip, and a large part of it was taken possession of by persons who settled upon it and acquired title to the parts they held by prescription. So much of the strip as lay between First and Washington streets remained in the possession of the city. The river cut into the bank and washed it away, until a part of Water street, as laid off on the plat, had fallen in and there was an abrupt declivity about fifteen feet high at the foot of First street. The space between this bank and the river was used as a dumping ground for some years, and was covered with brush, logs, weeds, and debris, the water extending out over it when the river was up. The city, to protect its streets from further caving in, put down some piling. The water in the river was shallow for some distance from the bank, so that the place could not be used for boats. There was considerable odor from the place being used as a dump, and the protection which the city had put up for its streets was not altogether satisfactory. So on January 22, 1901, the city made a lease to W. E. Labry for a piece of this ground lying at the intersection of First and Water streets thirty feet wide and 150 feet long, running west with Water street. The lease was made for ten years, and it contained this clause: "It is understood and agreed that in making this lease the city of Henderson only leases such title as it has, and does not in any wise agree to protect said Labry in the quiet and peaceful possession of said premises as against any person or persons seeking to have him vacate said premises; but it does hereby agree to bind itself and its successors that it

will, in so far as the city of Henderson in its corporate capacity is concerned, and to the extent of its title, keep the said Labry in the possession of said premises for said period of ten years.'' Labry entered under his lease and spent about $1,500 in filling up the hole which the water had washed in the bank of the river, After he had got the place filled up he built a coal office on it just at the foot of First street at an expense of about $300, and west of his office he built a stable at an expense of about $500, in which he keeps eight or ten horses, with hay overhead. Appellee owns a tobacco factory on the opposite side of Water street, and he filed this suit, charging that Labry's buildings were in the streets of the city, and praying that the court require him to remove them. The circuit court entered judgment as prayed, and Labry appeals.

The authorities of a municipal corporation hold the public ways of the city in trust for the use of the public, and can not sell or lease them for private use. A lease by a city to an individual of the streets or public ways of the city for private use confers no authority upon the lessee to appropriate them to his use. (Buckner v. Trustees of Augusta, 1 A. K. Mar., 9.)

In Dillon on Municipal Corporations, sec. 660, it is said: ''The king can not license the erection or commission of a nuisance, nor in this country can a municipal corporation do so by virtue of any implied or general powers. A building or other structure of a like nature, erected upon the street without the sanction of the Legislature, is a nuisance, and the local corporate authorities of a place can not give a valid permission thus to occupy streets without express power to this end conferred upon them by charter or statute. The usual power to regulate and

control streets has even been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner by erections made for his exclusive use and advantage, such as porches extending into the streets, or flights of stairs leading from the ground to the upper stories of buildings standing on the line of the streets. The person erecting or maintaining a nuisance upon the public street, alley, or place is liable to the adjoining owner or other persons who suffered special damage therefrom."

Although the defendant's structures may be a public nuisance, no one can maintain an action for their removal but the public, or some one who suffers special damage therefrom. It has been held that, where a property owner owns to the center of the street, he may maintain an action to have structures removed which are within the line to which his title extends. But the structures in question are not within any part of Water street to which appellee has title under this rule, if it be conceded that his title runs to the center of the street, which is not shown. The structures are on the other side of Water street. They do not interfere in any way with the use of the street by appellee. The street remains as it was before the buildings were put up. The buildings are on ground where there was an abrupt bank of earth fifteen feet high before Labry filled it up. Appellee has sustained no special damage from the erection of the buildings. It is true they obstruct his view of the Ohio river to some extent, but it is not shown that they do him any real injury. It is charged that they increase the danger to the property by fire, but it seems that they did not affect the insurance in any way, and as to the danger from fire, it is, under the evidence, too slight to be ground for an injunction.

The remedy by injunction is a harsh remedy. The chancellor will not exert his extraordinary power of injunction to inflict a serious loss on the defendant, where the plaintiff shows no substantial injury. He has a discretion, and in the case of a public nuisance he will, where no substantial injury is shown, leave the party to his legal remedy.

In High on Injunction, sec. 762, the rule is thus stated: "No principle of the law of injunctions is more clearly established than that private persons, seeking the aid of equity to restrain a public nuisance, must show some special injury peculiar to themselves, aside from, and independent of, the general injury to the public. And in the absence of such special and peculiar injury sustained as a private citizen, he will be denied an injunction, leaving the public injury to be redressed upon information or other suitable proceeding by the Attorney General in behalf of the public. Even in cases of unquestioned nuisance, if the party complaining shows no special injury to himself different from the common injury to the public, he is not entitled to an injunction. In accordance with these principles, where it is made to appear, after injunction granted, that the injury suffered by complainant is sustained by him in common with every taxpayer, and the damage is therefore not special or peculiar, the injunction will be dissolved. And where the injury is doubtful and the evidence conflicting the relief will generally be withheld."

Again, in sec. 763, it is said: "As illustrating the general doctrine above, stated, denying relief by injunction against special nuisances in behalf of private citizens who suffer no special or peculiar injury different from that which is inflicted upon the public by the grievance in question, it is held that a private

citizen can not enjoin the closing up of public streets, when he shows no peculiar injury personal to himself as the result of the act proposed.  So a private citizen, owning a wharf adjacent to navigable waters, can not restrain defendants from committing a purpresture, such as filling up a dock adjoining plaintiff's wharf, when he has no private right or easement in the dock itself; the fee being in the State."

Judgment reversed, and cause remanded for a judgment as herein indicated.