## Lee v. Macht et al.

(Decided October 14, 1930.)

ROUSE & PRICE for appellant.

O. M. ROGERS and D. E. CASTLEMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

In the year 1892 and prior to the incorporation of the town of Erlanger, in Kenton county, Ky., the heirs of William T. Stevenson made a plat of a small parcel of land owned by them and contiguous to the then unincorporated town, and which lay between what was then a public pike, but now a part of the Dixie highway, and the main line of the Cincinnati, New Orleans & Texas Pacific Railway Company. It was in a triangular shape, coming to a point on its eastern end; the pike or the highway not being perfectly parallel with the railway track. The highway was and is the northern boundary of the plat and the railway track its southern or southeastern boundary. The plat was recorded, and there appeared upon it a street or an alley on its south side immediately adjoining the railroad right of way, the track on which was about 11 or 12 feet higher than the platted street or alley, and it was located near the foot of a hill, the alley occupying the low surface north of and beyond the foot of the hill. The platted lots were 25 feet wide and from the east point covered by the plat to Stevenson street, which was made through the plat, and including the two lots west of Stevenson street, there was no dividing line so as to make a northern and southern tier of lots. But west of the two lots lying immediately west of Stevenson street there was a line parallel with the Dixie highway dividing the lots into two tiers; the north tier fronting on Dixie highway, and the south one fronting on the platted Slater street or alley, which was 20 feet wide.

Later the platted territory became a part of the incorporated town of Erlanger, but neither it nor any one else ever improved Slater street or alley adjacent to the railroad tracks, and it all the while, and at the time of filing this action, was grown up in weeds, bushes, briars, and in some places trees of considerable size, although there were some parts of it over which vehicles could travel and there was a kind of path meandering

through or upon it for the entire length of the plat. No houses of any kind have ever been built on the tier of lots fronting and abutting upon the platted Slater street or alley which runs between Stevenson street in the eastern part of the plat and Erlanger street at his western boundary.

Appellee and defendant below, James C. Macht, acquired by purchase lots 11, 12, 13, 40, 41, and 42, on the plat; the first three of which abutted on the Dixie highway and are between it, and the last three of which abut on the unimproved platted street or alley. He at once began to use them as consolidated lots in the operation of his business as a coal dealer under an assumed company name, and as a dealer in building material, all of which was conducted on the consolidated lots. He conceived the idea of constructing a railroad spur track leading from the main track of the railway company across the platted alley, or street, onto his lots, and procured the consent of the railway company for him to do so at his exclusive expense, but for it to be constructed by the railroad company so as to guarantee the safety of its equipment when passing over it. Thinking that perhaps it was necessary, on account of the dedicatory plat, to obtain the permission of the city council of Erlanger for the spur to be constructed across the platted alley or street, he made application therefor, and permission to do so was granted to him and the railroad company on September 2, 1924, after which the spur track was constructed spanning diagonally the platted and unimproved street; the span resting upon solid concrete pillars at either end, and both of which were erected outside of the boundaries of the street. It was later conceived to be necessary by the railway company and Macht that, because of the length of the span, occasioned by its diagonal direction, it was necessary to construct supports in its center, and permission to do so was obtained from the city council in the same manner on July 6, 1926, immediately after which the supports were constructed, and they consisted in concrete pillars, the dimensions of which above the surface of the street were 12 inches thick and 18 inches wide, with a passway on either side of them of 9½ feet; the spur track being about 11 feet above its surface.

T. W. Spinks was engaged in the same business in the town of Erlanger in which the defendant Macht was

engaged, which made them local competitors. Just about the time the concrete pillars were finished, and on September 22, 1926, Spinks negotiated the purchase of lot No. 7 on the plat, which is the second lot west of Stevenson street, and being only 25 feet therefrom. In taking the deed, he did not do so in his own name as grantee, but in the name of appellant and plaintiff below, "D. Collins Lee, Trustee," with nothing appearing in the deed as to who was the cestui que trust and with no powers whatever conferred upon the trustee. Three days thereafter this action was brought by the trustee in that deed, without naming in the caption or elsewhere the equitable owner, against Macht individually and as operator under his assumed name, and against the railway company, to enjoin the operation of trains over the spur track, and to require by mandatory processes its removal, not upon the ground that it constituted a nuisance in the alleged street, but upon the ground that it, and the pillars upon which it rested, constituted an obstruction in the street, and to the extent that it did so plaintiff's easement therein as an abutting owner upon the street was thereby appropriated, and, to the extent that such appropriation deprived him of his appurtenant intangible right, it was a taking of his property, and that, since such alleged taking was not done by a common carrier with the purpose of serving the general public, but only for the private purposes of the individual defendant, Macht, he (plaintiff) was entitled to have the structure removed.

The answer denied that the street had ever been accepted by the town of Erlanger, and for that reason it was denied that it was a public street. It also denied other material averments of the petition, and pleaded the permissions obtained from the city council of Erlanger, and also an estoppel against plaintiff and his cestui que trust, and upon the trial, after evidence taken, the court dismissed the petition, to reverse which plaintiff prosecutes this appeal.

Passing the question as to plaintiff's right to maintain this action in his sole name as mere dry trustee and without joining his beneficial owner, and conceding that the act of the city in granting the permits referred to was sufficient to create an acceptance of the theretofore unaccepted dedication, it will at once be perceived that there are only two possible questions that could arise

from the foregoing facts, and which are: (1) Whether the described obstructions upon and over Slater street or alley, at a point 225 feet or more from the point where plaintiff's lot abutted upon it, constituted a taking of any of plaintiff's property, which necessarily would be intangible, for it was not contended that plaintiff owns the fee in any part of the street, and which eliminates from the case all questions growing out of additional burden upon a public highway? and (2), whether or not the structures as described, they not materially interfering with any of the plaintiff's rights in the use of the street, constituted at most only a public nuisance for which neither an action for its abatement nor for the recovery of damages may be maintained by him as an abutting owner in the absence of some special or peculiar injury to him or to his abutting property over and above that sustained and suffered by other members of the public?

Plaintiff's counsel seem to concede that, if the rights of their client are to be gauged by and fall within those flowing from a public nuisance, as contained in question 2, supra, then the judgment could possibly be sustained following this court's opinions in a long line of cases, some of which are Barr v. Stevens, 1 Bibb 292; Cosby v. O. & R. R. Co., 10 Bush, 288; Corley v. Lancaster, 81 Ky. 171; Labry v. Gilmour, 121 Ky. 367, 89 S. W. 231, 28 Ky. Law Rep. 311; Crammond v. Newman, 143 Ky. 544, 131 S. W. 1020; Husband v. Cotton, 171 Ky. 177, 188 S. W. 380, L. R. A. 1917A, 1150; Winter Bros. v. Mays, 170 Ky. 554, 186 S. W. 127; Maxwell v. Fayette National Bank, 186 Ky. 625, 217 S. W. 690; Trustees of Town of Caneyville v. Phelps, 201 Ky. 190, 256 S. W. 3; Illinois C. R. R. Co. v. Covington, 211 Ky. 825, 278 S. W. 109. There are other domestic ones to the same effect, and their announced and adopted doctrine is in accord with the opinions in other jurisdictions, and also with standard text-writers upon the subject, and, if there is any contrary holding anywhere, but which we have been unable to find, it is both lonesome and emaciated because of the lack of nutritious support of sound reasoning.

A reading of the cited opinions will disclose that the rule announced by them does not apply where the public passway is wholly obstructed, or so much so as to render it practically useless; but it does prevail where the structure constituting the obstruction does not materially

obstruct the use of the street as a public passway, nor unreasonably impair the incorporeal property rights of an abutting owner therein, and which consist chiefly in the rights to light and air and reasonable ingress and egress to and from his abutting property. It is not shown in this case that any such rights of plaintiff are in the least jeopardized or interfered with by the construction and maintenance of the structures of which he complains. In the first place, his lot does not abut immediately upon or immediately adjacent to the complained-of obstructions, but, on the contrary, it is located some 250 or more feet east of them, and which intervening distance, as well as farther west from plaintiff's lot toward Erlanger street, there is practically no travel by anyone and no proof whatever that plaintiff ever traveled thereover to get to or from his lot. Nor was there any testimony introduced to show that the elevation of the span above the present surface of Slater street or alley obstructs the travel upon it. The only complaint in regard to that phase of the case is that, if Slater street is ever improved, it will perhaps become necessary to elevate it, since it occupies low ground, and if and when done the distance between the span and the surface of the then improved street will become so narrow as to materially obstruct travel; but in answer to which it is sufficient to say that, when that situation arises, if ever, will be the time to complain of it.

Because of the precarious situation of plaintiff, growing out of the facts and the law as above outlined, his counsel, as we understand their briefs, plant the case chiefly and substantially on plaintiff's alleged rights growing out of question 1, supra; i. e., that the complained-of obstructions, to the extent that they occupy any portion whatever of Slater street, is a pro tanto taking of his incorporeal property rights in the street as an abutting owner, and for which he may have relief, and which is not confined to an action for damages, but which latter it is conceded would be true if the spur track was a part of the railway system of the defendant railroad company as a common carrier, thereby giving all members of the public the right to use it. In that case counsel seem to concede that their client would not be entitled to an enforced removal of the spur track and its support because of the attached interest and rights of all members of the public in and to its use, but that his remedy

would be an action against the railway company, who owned the public utility obstruction, to recover damages because of the wrongful taking and appropriation of plaintiff's property rights in the street. They do strenuously argue, however, that, since the obstruction complained of is, as shown by the record, not a public utility owned by the defendant railroad company, but is exclusively private property owned by the individual defendant, Macht, with no rights in any other member of the public to use it, any abutting owner on any portion of the street, which of course includes plaintiff, their client, may either recover damages for such alleged wrongful appropriation of his property rights, as above described, or may require an abatement of the obstruction and its entire removal from the street, and which latter relief is the only prayer of plaintiff's petition.

That argument proceeds upon the theory that an obstruction in or upon a public way, if built and maintained by one who has authority to condemn in the exercise of the right of eminent domain, may not be abated upon application therefor by an abutting owner, but that he is relegated to his action for damages if they be such as to entitle him to maintain the action under the doctrine of the cases supra; but that, if the same obstruction should be erected by one who does not have the right to condemn and who erects the obstruction for his sole private use, then the abutter is not confined to his action for damages, but may upon proper application to the court require its abatement and have it entirely removed, and which distinction, it will be perceived, is attempted to be based solely upon the fact that in the one case the obstruction after completion becomes a quasi public utility, while in the other it remains a strictly private one.

That contention, which is evidently made to differentiate this case from the cited ones supra from this court and others of like tenor, is to our minds so vague and shadowy as to strip it of convincing force, as well as to render it imperceptible to our mental vision. By necessary implication it asserts that a structure in or upon a street made for the sole and private purpose of the private individual who erected it may be only a nuisance from which prescribed rights and remedies flow, one of which is abatement; but that, if the same structure was erected by a common carrier with power of eminent

domain, or by any other public utility with like power, it would not be a nuisance, or, if one, that other and different rights and remedies would be thereby created in an abutting owner. Aside from the entire dearth of reason and logic in support of such a contention, the cited cases supra from this court, and many others not cited, acknowledge no such distinction. On the contrary, a mere reading of them will show that many of the involved obstructions, wherein a private action by an abutting owner was denied because he showed no special damages peculiar to himself, were erected by individuals for their exclusive private purposes, and who had no authority of condemnation under the right of eminent domain; while in others of them the obstruction was one that was put into the street by one who had such rights of condemnation, and this court drew no distinction whatever as to the rights and remedies of the abutting property owner upon the obstructed passway. It is not necessary for us to designate which one or more of the cited cases come within the one classification or the other, since that information may be obtained by a casual consultation of them. In view of the long-standing position of this court, which has been continued throughout its existence, it is now too late to depart therefrom by the adoption of the distinction contended for, even if it had logic and reason for its support.

But the premise upon which that argument is attempted to be maintained is to our minds without foundation in the law; and which premise is that an abutting lot owner upon a public passway has an incorporeal property right, as appurtenant to his lot, to have the street entirely unobstructed. On the contrary, he has an easement property right in and to the street only to the extent that his rights to air and light, and of ingress and egress, with, perhaps, others not necessary to memtion, are not unreasonably interfered with by the complained-of obstruction. In other words, if the obstruction does not unreasonably interfere with the lot owner's exercise of such indicated rights, then no right of his in and to the street in front of his lot has been interfered with, nor has any of his property been taken so as to entitle him to either an action for damages or for an abatement of the obstruction.

None of the cases cited by learned counsel for plaintiff, when analyzed, holds to the contrary; the domestic

ones being Koch v. Ky. & Indiana R. R. & Bridge Co., 80 S. W. 1133, 26 Ky. Law Rep. 216, and Leitchfield Mercantile Co. v. Commonwealth, 143 Ky. 162, 136 S. W. 639. On the contrary, the case of Dulaney v. L. & N. Ry. Co., 100 Ky. 628, 38 S. W. 1050, 18 Ky. Law Rep. 1088, was one the facts of which were very much on all fours with those involved here. The obstruction there involved was a private railroad switch built by private individuals and for their private purposes. The action was one by abutting owners to enjoin operation and for abatement. But under the proven facts that their rights, limited as aforesaid, in and to the street were not interfered with, and that none of their property was taken because the obstruction was to no greater extent than a reasonable use of the street without impairing a like reasonable use by the plaintiffs therein, and which reasonable use limited their property rights in the street, the injunctive relief was denied by the trial court, and its judgment was affirmed in an exhaustive and convincing opinion written by the lamented Judge J. H. Hazelrigg. Many prior opinions from this court are cited in that opinion, and the points made and argued herein were likewise adversely answered by it, and the court came to the conclusion that the private obstruction therein, notwithstanding the arguments made, was only a nuisance created for private purposes solely, although the particular structure was a railroad track, and which parallels that case with this one, and is decisive of it.

It is not the office of an opinion to assume the proportions of a dissertation upon the legal questions involved in a case, much less upon all those that may be argued by counsel, and for that reason we neither cite nor elaborate upon the opinions in the cases cited and referred to in the Dulaney case. Suffice it to say that the doctrine therein announced is decisive of this case, and which, as we interpret the opinion, is adverse to the contention of plaintiff's counsel. The conclusions of this court in that case have not been departed from so far as we have been able to discover; but, on the contrary, the later cases, some of which are first cited above, by implication at least, recognize and follow the doctrine laid down in the Dulaney opinion, and which, we repeat, is to the effect that an abutting property owner has not incidental, unlimited, and appurtenant property rights in and to the street, except as so circumscribed supra, and

he may have relief when they are unreasonably curtailed or interfered with, but that, so long as there is left to him the unobstructed reasonable use of the streets for his purpose as an abutting owner, no property of his has been taken. Furthermore, that the Dulaney case, and the others cited, draw no distinction between the rights of an abutting owner to abate a nuisance based upon the powers and rights of the individual who creates it, but place upon a par all nuisances in a public passway by whomsoever maintained, and give the same remedies to abutting owners, regardless of the character of the structure or the purposes which it was intended to serve.

The testimony in this case, as we have seen, does not point out any injury that plaintiff sustained, if indeed he sustained any at all, over and above that of any other member of the public, and, since none of his property rights, as hereinbefore outlined, in the street were invaded, for the reasons hereinbefore discussed, he has not shown his right to the injunctive relief he seeks, and the court properly dismissed his petition.

Wherefore the judgment is affirmed.

The whole court sitting.