## City of Covington et al. v. Greenburg et ux.

(Decided March 15, 1932.)

GALVIN & TRACY for appellant.

BLAKELY & MURPHY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Eleventh street in the city of Covington runs east and west, extending from Banklick street to the Licking river, intersecting practically all the principal streets of the city running north and south, including Russell, Washington, and Madison avenues. S. E. Greenburg and wife own a lot fronting 47.7 feet on the south side of Eleventh street between Russell and Washington and extending back with an alley a uniform width 108.9 feet to another alley. This lot is improved with a modernly equipped eleven-room two and a half story brick and stone residence and also a brick garage.

The Chesapeake & Ohio Railway Company, the Louisville & Nashville Railway Company, the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company have tracks in and along Washington street. Prior to the year 1927, Eleventh street was of a uniform grade from Russell to Madison avenue crossing at a level over Washington street. In 1927, as a part of a general plan and project of the city to eliminate grade crossings, the aforementioned companies were directed by ordinance to construct an overpass or bridge over Washington street. In constructing this bridge, the crossing over Washington street was raised more than 9 feet, necessitating approaches with a 7 per cent grade.

S. E. Greenburg and his wife instituted this action in the Kenton circuit court against the city of Covington, the aforementioned railroad companies, and the Boxley Bros. Company, construction contractors, alleging that their property had been damaged in the sum of $10,000 by reason of the change in the grade of the street. From a judgment for plaintiffs for the sum of $250 which was entered in conformity with the verdict of the jury, defendants are here on motion for appeal.

Appellee Greenburg and a number of witnesses testified that his property had been damaged by the erection

of the bridge and the change in the grade of the street, and most of the witnesses stated that they had been in the real estate business in Covington and other cities for a number of years and were acquainted with values of realty in the vicinity of appellees' property. These witnesses testified as to the values of the property immediately before the bridge was constructed and immediately after it was completed, and their evidence is in practicable agreement that the property was worth approximately $5,000 less after the change in the grade of the street. The evidence shows that the bridge is 170 feet from the northeast corner of the Greenburg lot. The alley east of the lot is 16 feet wide, and the change in the grade beginning 16 feet east of the alley is very gradual; the increased elevation 72 feet from the Greenburg property being less than 15 inches, according to evidence of engineers who were introduced by appellees. One of the engineers testified that a line extended at a level from a point 2 feet above the west end of the bridge would strike the Greenburg house at a point 5 feet 1 inch higher than the front porch. It is thus apparent that the sidewalk at the west end of the bridge is approximately 3 feet higher than the porch floor. Appellee and his witnesses admit that the grade of the street directly in front of his property has not been changed and that his right of ingress and egress has in no way been interfered with. When asked to go into detail as to causes contributing to the depreciation of the property, their evidence as to the elements entering into the damage is more or less vague and confusing. When carefully analyzed, their estimates as to the damages are found to be based on the inconvenience in ascending and descending the approaches to the bridge in going to or from Madison street and on the interference with the view from appellees' home in that direction. There is evidence that before the change in the grade there was an unbroken view from appellees' property to and beyond Madison which has been broken by the bridge as erected. There is, however, considerable conflict in the evidence as to the extent of the interference with the outlook in that direction. As an additional item of damage, one witness for appellee stated that the bridge as now constructed afforded a hiding place and thereby increased the danger of holdups.

As grounds for reversal of the lower court's judgment, it is urged (1) that the court should have sustained

the demurrer to plaintiffs' petition; (2) that the court should have directed the jury to return a verdict for defendants; (3) that the instructions given the jury were erroneous.

In the petition it is alleged, in substance, that Eleventh street is one of the main streets of the city and has for years been a channel for traffic between the eastern and western portions of the city, but that, by reason of the increased elevation of the bridge over Washington street a number of residences on that street west of the bridge and in the neighborhood of appellees' property have been destroyed as residence property, and that the residence character of the community has been destroyed. The only direct and specific allegation as to the particular items entering into the alleged damage to plaintiffs' property is as follows:

> ". . . That previous to the change of grade of Eleventh Street plaintiffs' property had a clear and unobstructed view toward Madison Street and that his view has been cut off and destroyed; that the change of grade has made an unsightly elevation in the street in full view of plaintiffs' property."

Then, after alleging the rental values of the property immediately before and immediately after the elevation of the crossing, indicating a loss of $50 per month by reason of the changed conditions, the petition continuing says:

> ". . . that conditions caused by the acts of the defendant companies have made plaintiffs' property undesirable for residence purposes but the premises owned by plaintiffs are suitable for such purposes and no other."

From the foregoing it will be seen that the only direct items alleged as causing damage to plaintiffs' property are the unsightly appearance of the new structure and the obstruction of the view from the property toward Madison street. As to any other damage to plaintiffs' property, the allegations of the petition amount to little if anything more than mere conclusions. There is absolute absence of allegations or proof of any interference whatever with this property in so far as ingress and egress, light or air is concerned. All the proof relied upon to show damage to the property relates

to the changed outlook from the property and to the increased exertion made necessary in ascending and descending the bridge when crossing over Washington street.

We have carefully examined all cases from this state cited by appellees as sustaining their position that their property had been taken, injured, or destroyed within the meaning of section 242 of the Constitution of Kentucky, but beginning with the case of Board of Councilmen of Frankfort v. Edelin, 82 S. W. 279, 26 Ky. Law Rep. 601, we find that all the cases cited involve a direct physical injury to. property or to such obstruction of street or alleys in proximity therewith as to close them to traffic. As an instance of the inapplicability of the cases referred to, reference is made to the Edelin case, supra, where the street along the entire front of the property was cut down from 2 to 10 feet, necessitating grading and terracing of the property by the owner and the construction of ways of ingress and egress. An entirely different case would be presented here if, in compliance with the ordinances of the city, appellants had materially raised or cut the grade in front of appellees' property or had closed Eleventh street or so obstructed it as to render it unfit for the purpose for which it was dedicated.

No matter how urgent the public need, private property may not be taken, injured, or destroyed without just compensation, nor may abutting property owners be deprived of the incorporeal rights of property they may have in public streets and alleys adjacent to their property, yet it has been consistently held by this court that abutting owners hold their property subject to the appropriation of the street to such reasonable uses as may best promote the public good; and, so long as the use or any change in the grade of the street does not interfere with any right of the owner in his property or in his reasonable use of the street, there is no taking or injury thereof within the meaning of the Constitution. Cosby v. Owensboro & R. Ry. Co., 10 Bush 288; Lee v. Macht et al., 235 Ky. 509, 31 S. W. (2d) 906, and cases therein cited.

Brief filed by counsel for appellees indicates exhaustive research of authorities upon the question of interference with prospect or outlook, but none of them

802

indicate that recovery may be had for such an obstruction as is complained of here.

We have reached the conclusion that the evidence was not sufficient to take the case to the jury. The conclusion reached makes it unnecessary to discuss other grounds argued by counsel.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.