CASE 62—PETITION EQUITY—SEPTEMBER 28.

# Marshall & Kilpatrick vs. H. H. Curtis, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The local law of a State can give no liens to be adjudicated and enforced in the State courts by a proceeding *in rem* against a vessel plying between the home port and a port in another State, even to a resident of the home port and against a vessel whose owners reside at the same port.—

   It would be in conflict with the Constitution of the United States (*clause 1, sec. 2, art. 3, and the Judiciary Act of Congress of 24th September*, 1789), which gives jurisdiction exclusively to the United States Admiralty Courts. (*The Moses Taylor*, 4 *Wallace*, 411; *Hine vs. Trevor*, *Ib.*, 571.)

2. A proceeding against "*The Steamboat Magnolia and owners*," in which the thing itself is seized and impleaded as a defendant, without naming the debtor and present owner, and making them parties, is strictly an action *in rem*.

3. The marine lien, of which the United States Admiralty Court has exclusive jurisdiction, attaches to the thing which can be followed anywhere and enforced against any person, by making the thing a defendant. No such remedy was known to the common law,

therefore, such cases do not fall within that clause of the Judiciary Act of 1789, saving to the State court's jurisdiction: where the common law afforded a remedy. (*The Moses Taylor, supra; The Hine vs. Trevor, supra; Bird vs. The S. B. Josephine, 39 N. Y., 19; The Belfast, 7 Wallace, 631.*)

4.  The act of 1789 saves to the State courts a common law jurisdiction, with common law remedies; but the right of proceeding *in rem* against a vessel as the defendant, was never a common law remedy, and was derived from the civil law. At common law, the debtor or owner is an essential party, and must be before the court by actual or constructive service. His interest in the vessel may be attached.

5.  By the Admiralty law, as understood both in England and America, no lien attaches, even on a vessel engaged in a foreign trade, for repairs done or materials furnished at the home port, except such as a shipwright had at common law, which was so long as he retained the possession.

6.  Most of the States, by legislative enactment, have given material men, mechanics, &c., a lien on vessels for repairs, materials, &c., which, there can be little doubt, the local law might authorize the State courts to enforce by a common law proceeding *in personam*, and by attaching the interest of the original debtor or his vendee, inasmuch as such liens are not of original Admiralty jurisdiction.

J. F. & T. W. Bullitt and

Jas. O. Broadhead,                    For Appellants,

CITED—

8 *B. Mon.*, 87, 88; *Dudley vs. Price.*

1 *Parsons on Contracts,* 3d edn., 320, 321, *and note e.*

*Judiciary Act of Congress of* 1789, *sec.* 9.

4 *Wheaton,* 438; *The General Smith.*

2 *Gallison,* 398, 401.

2 *Parsons on Maritime Law,* 511.

11 *Peters,* 184; *The Orleans.*

12*th Rule of Admiralty.*

21 *Howard, change of* 12*th Rule of Admiralty.*

1 *Black,* 526; *Steamer St. Lawrence.*

*Abbott on Shipping,* 162, 163.

*Benedict's Admiralty, secs.* 31, 32.

BARRET & ROBERTS and
JOHN M. HARLAN,                                For Appellees,
                    CITED—
    *Civil Code*, secs. 264, 268, 762, 46, 118.
    *Sec.* 9, *Judiciary Act of Congress of* 1787, 1 *Brightly*.
    *Am. Law Reg., July,* 1868, " *Material Men and their*
    *Liens.*"
    *Rev. Stat.,* 1 *Stant.,* 201, 204.
    1 *Bush,* 532; *Kendall and wife vs. Coons.*
    *Act of* 1839, *Loughborough's Digest,* 112.
    34 *California R.,* 676; *The People vs. Steamer America.*
    4 *Bush,* 396; *Steamboat Hyatt vs. Reitz & Haney.*
    7 *Mon.,* 584; 5 *B. Mon.,* 449; 8 *B. Mon.,* 307.
    1 *Code Reps., N. S. (N. Y.),* 175; *Patterson vs. Taylor.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT, IN
WHICH JUDGE HARDIN DID NOT CONCUR:

Appellees, as material men, mechanics, &c., by pro-
ceeding *in rem* against the "steamboat Magnolia and
her owners," attached her at Louisville, Kentucky, aver-
ring that she was then in that port, advertised for the
port of New Orleans, Louisiana, and that she would
soon be taken beyond the jurisdiction of the court and
out of this State; also, that they had furnished said
boat, and done work upon her; that they and the
owners were residents of St. Louis, Missouri, and that,
by the laws of the latter State, they had a lien upon
the boat, her tackle and furniture.

Neither the debtor nor present owners, by name, were
made parties other than by the designation of " owners."

Appellants bonded the boat, and put in their defense to
the action, in which they deny any responsibility for said
claims, as they had, since their creation, bought said boat;
that she was plying between the ports of St. Louis, Mis-
VOL. V—39

souri, and New Orleans, Louisiana, but owing to ice, and the closing of the Mississippi river below St. Louis, she had been driven into the navigation of the Ohio river; that by the laws of Missouri appellees once had a lien, but that the time for which a lien was secured had expired, and that no lien now existed.

The claimants established the justness of their claims, .but proved no facts as to the character of the trade the boat was engaged in—whether a mere domestic commerce from one Missouri port to another, or from St. Louis to some port in another State.

It further appears, that when these debts were created, Captain Perkins was the sole owner, and that afterwards appellees purchased her. Perkins is no party to this suit, and appellees became so only because they appeared and bonded the boat as owners.

The court having subjected the boat to said claims, and by rule required the bondsmen to produce her, they have appealed to this court.

As the facts are not stated upon which the court could determine whether a lien was secured by the laws of Missouri, nor the law itself set out, but a mere averment, that by the laws of Missouri a lien existed, which is nothing more than the averment of a conclusion and effect of a law, it is difficult to determine that the statements of the answer, admitting that a lien once but did not now exist, being also but an averment of a conclusion and effect of law, should throw the burden of proof on the defendants to avoid the lien. This is rather an issue of what the law is, than the essential facts to determine its application. But however this may be, it is evident, from the statements of either or both parties, she was not a mere domestic boat, navigating between ports common to the same

State, and if not, there could be no law of Missouri
securing statutory liens to be adjudicated and admin-
istered by State courts, in a mere proceeding *in rem*,
because, by clause 1, section 2, article 3, United States
Constitution, it is declared that the judicial power of
the United States shall extend "*to all cases of admi-
ralty and maritime jurisdiction;*" and by the judiciary acts
of Congress of September 24, 1789, mere admiralty ju-
rsidiction is exclusively given to the admiralty courts of
the United States.  It is true, common law jurisdiction
with common law remedies, are saved to the State
courts by this enactment; but there never was a com-
mon law remedy and jurisdiction to pursue a vessel or
other thing by mere proceeding *in rem*, and have it
sold, but the debtor or owner was an essential party,
and must be before the court either by actual or con-
structive service of process.  The constitutionality of
these statutes of Congress have been uniformly sus-
tained by a long train of adjudications in the Supreme
Court of the United States, beginning with *Martin vs.
Hunter* (1 *Wheaton*, 304), down to *The Moses Taylor* (4
*Wallace*, 411); and *The Hine vs. Trevor, same*, 555; and
*The Belfast*, 7 *Wallace*, 631.

By the admiralty law, as expounded and understood
in admiralty courts both of England and America, no
lien attached, even on a vessel engaged in a foreign
trade, as to repairs and materials furnished at her
home port, except such as a shipwright has at com-
mon law, which is so long as he retains possession.
But most of the American States have, by State stat-
utes, provided for a lien in favor of the material men,
including all furnishers and mechanics, for repairs, and
and have also, in many instances, attempted to confer
jurisdiction upon the State courts to administer those

statutes, even against vessels plying between the home port and that of another State. And some have also enacted that the United States courts shall have concurrent jurisdiction.

It is a plain proposition of constitutional law that the State Legislatures can confer no jurisdiction upon the Federal courts; but whether, as between their own citizens and as to a vessel owned within their jurisdiction, they may not enact such a lien, and have it enforced by a personal proceeding in the State courts, is a very different question; and whilst the State Legislatures cannot take from the United States an exclusive admiralty jurisdiction and vest it in the State courts, either concurrent or exclusive, nor can confer upon the United States courts additional jurisdiction—whether the United States courts will administer these State liens as part of their admiralty laws and jurisdiction, or by personal proceedings, is also a very different question.

In *The Moses Taylor*, 4 *Wal.*, 411, the Supreme Court of the United States held, that the statute of California, "to the extent in which it authorized actions *in rem* against vessels for causes of action cognizable in the admiralty, invested her courts with admiralty jurisdiction," and was void. This case was upon a marine contract, against "The Moses Taylor," plying the Pacific Ocean between San Francisco and Panama.

In *The Hine vs. Trevor*, 4 *Wal.*, 571, which was a case of collision on the Mississippi river within the jurisdiction of Iowa, it was held by the same court that this was a marine tort exclusively within the admiralty jurisdiction of the Federal courts, under the Congressional act of 1789; and that the act of 1845 only applied to the lakes and their tributaries; that by the act of 1789, jurisdic-

tion was given, as to *all rivers capable of being navigated by boats of ten tons burthen or upwards;* whilst under the act of 1845, jurisdiction was only given as *to boats of twenty tons or upwards,* and not upon the capacity of the water navigated. In both of these cases it was said the marine lien attached to the thing, which *could be followed anywhere, and enforced against any person, by making the thing a defendant;* but that no such remedy was known to the common law, this being transported from the civil law; and, therefore, such cases could not fall within the exceptions to the act of 1789, saving to the State courts jurisdiction where the common law afforded a remedy. And the same principle has recently been upheld by the Appellate Court of New York, in an elaborate and able opinion in *Bird vs. The Steamboat Josephine,* 39 *New York Reports,* 19, or 12 *Tiffany;* and also by the Supreme Court of the United States in *The Belfast,* 7 *Wallace,* 631.

The court, in the former case, mentions a class of cases where the State statutes gave a remedy *in personam,* and by attachment of the defendant's interest in the thing, and said, such actions could be maintained in the common law courts; but in the next sentence the court said: "It could not have been the intention of Congress, by the exception in that section, to give suitors all such remedies as might afterwards be enacted by State statutes."

In the case of *Stewart vs. Harry,* 3 *Bush,* this court held, under the Kentucky statute, the owners could be held personally responsible for the liability incurred; and that a suit against them in person, with attachment against their respective interests, could be adjudicated in the courts of this State, whilst they were still owners of the attached property.

So in the case of *The Steamer Hyatt and owner vs. Reitz & Haney,* 4 *Bush,* 395, where the debtor was made

a party, and brought before the court, and his interest attached, this court, consistently with all the authorities, both Federal and State, held that this was not an admiralty proceeding *in rem*, but a common law proceeding and attachment, and that the State court had jurisdiction, and could adjudicate the question and enforce the lien; and so has the Supreme Court of the United States in the case cited from 7 *Wallace*.

By the twelfth rule in admiralty, material men could proceed *in rem* against domestic ships and boats, when the local law gave a lien to them for supplies, repairs, and other necessaries; but in May, 1859, this rule was so far repealed and amended as to allow only proceedings *in personam*, and not *in rem*, though the local law might allow such a lien.

The consequence of this alteration, as recently decided by Justice Field in Admiralty, sitting in the District of New Jersey, and reported in the August, 1869, number of the *American Law Register*, 477, *Jackson vs. Steam Propeller Kinnie*, is, that, in cases of domestic ships, for supplies furnished at a home port, a lien created by a State law is one which a court of admiralty can neither recognize nor enforce by a proceeding *in rem*. It would, therefore, result, on a proper proceeding *in personam*, that the State courts could enforce such liens, because such would not belong to the exclusive admiralty jurisdiction of the Federal courts.

There can be but little doubt, we apprehend, that the State Legislature might enact laws giving a lien and remedies in the State courts, as against the owners and their vessels, strictly domestic, and plying between ports common to the same State; for as to these there is no strictly admiralty jurisdiction, hence no exclusive jurisdiction in the Federal courts; and as this is not among

the delegated powers to the United States, nor prohibited to the States, it may be exercised by the States; and to this effect was the holding of the United States Supreme Court in *Allen et al. vs. Newberry* (21 *How.*, 246–47), and *Maguire vs. Curd, same*, 251.

Whether, when a lien is given by the local law, at the home port, even as against the owners and their assignees, on the vessel plying from such port to a port in another State, as between citizens of the State to which the home port belongs, the creditors and holders of such liens may not follow the vessel and assert this lien, by making the former owners and their assignees parties in the courts of another State, just as the mortgagee of personal property might follow it, and assert his lien against the mortgagor and his vendee in the courts of any State where found, such being a common law proceeding *in personam* as well as *in rem*, we need not now decide, because such a case is not presented by these pleadings.

Whatever may have been the conflict between the common law and admiralty courts of England previous to our separation, and however in these severe and angry contests the former may have circumscribed the jurisdiction of the latter to strictly ocean navigation and inter-oceanic commerce, there can be no doubt, under the express delegation of exclusive admiralty jurisdiction to the Federal Courts, and the power in Congress to regulate commerce between the States, as found in the United States Constitution, all mere marine liens and admiralty proceedings now under the several acts of Congress, belong exclusively to the United States courts; therefore, what we mean now to say, is, that this case, as presented, is one strictly *in rem*, and not *in personam*, as the original owner,

the debtor, is not made a party, nor, indeed, any one else, by name, but the boat alone ; hence it is strictly, and to every legal purpose, a proceeding in admiralty, over which the State courts have no jurisdiction, because there could constitutionally be no local law in Missouri conferring jurisdiction upon her courts, or the courts of any other State, in such proceedings.

But whatever may be the disposition of the admiralty courts to grant relief *in personam* to the material men, furnishers, &c., of the home port, where the local law allows a lien, as this is not of original admiralty jurisdiction, there can be but little doubt that the local law might authorize the State courts to enforce such liens by a common law proceeding *in personam,* and by attaching the interest of the original debtor, or his vendee, making all the necessary parties ; therefore, upon the return of the cause, the plaintiffs, if they should offer to do so within reasonable time, should be permitted to amend their pleadings, and make all the necessary parties, and bring them before the court, by actual or constructive service of process, and then the court should proceed to adjudicate upon such presentation as then made ; but in case of failure to do so, dismiss these proceedings absolutely.

Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.

Judge HARDIN does not concur in this opinion.