JUDGE HARDLST
dbmvebed the opinion oe tub cotjbt.
On the 31st day of January, 1864, the appellees, A. J. Alexander & Co., a firm composed of A. J. Alexander and E. L. Bently, executed to the appellant their bond stipulating for the sale and conveyance to him of a tract of land in Meade County, estimated to contain between four hundred and fifty and five hundred and twenty-five acres, *162 including valuable mills and a distillery and other improvements thereon, all of which were sold to the appellant at the price of twenty thousand dollars, payable as follows: five thousand dollars June 10, 1864; five thousand dollars January 1, 1865; and the remaining ten thousand dollars in four equal installments, due at six, twelve, eighteen, and twenty-four months from the date of the contract; and the last five deferred payments were to bear interest from the 10th of June, 1864; when, upon the receipt of the first payment, possession was to be given of the mill, miller’s house, and the apparatus and appurtenances of the mill; and the possession of the residue of the land, embracing a farm with a dwelling thereon, then occupied by Bently, was to be given on the 1st of January, 1865, when the vendors were to convey the property to the appellant by a deed, with general warranty of the title, reserving a lien for the unpaid purchase-money.
The appellant appears to have paid the first and second installments of five thousand dollars each, and also the third and fourth of two thousand five hundred dollars each, as they severally became due; and to have received the possession, according to the contract, of all the property except the farm and its appurtenances occupied by Bently, which was withheld by him in violation of the contract. And although Alexander and his wife attempted to comply with the contract by the execution of a deed to the appellant on their part, which they acknowledged on the 8th of October, 1864, it seems that Bently refused to unite in the conveyance.
By the terms of the contract the vendors reserved the right to have leased to them the use of the land for the purposes of mining and boring for oil; and it appears that, in accordance with this reservation, the appellant, *163 on the 10th day of September, 1864, executed to the appellees a lease of the land for said purposes for a term of ten years.
It also appears that the appellant, on the 30th day of November, 1865, executed a lease to Coleman & Farleigh of the mills and carding-machine attached, with the waterpower to operate the same, and the miller’s house, for a term ending on the 1st of January, 1867; and that the lessees had the use of the property during said term.
This litigation was commenced by the appellant on the 17th day of October, 1865, by the institution of an ordinary action against the appellees for the recovery of twenty thousand dollars as damages for the breaches of their covenants to deliver the entire possession of the premises on the 1st day of January, 1865, and then to convey the property.
In this action Alexander filed a separate answer, which lie made a cross-pleading against both the plaintiff' and his co-defendant Bently; and not controverting the facts that Bently had failed to deliver or permit the delivery of the entire possession of the property as stipulated in the contract, and would not join him in conveying the property, he alleged, in substance, that these apparent violations of the contract were the result of collusion between the plaintiff and Bently for the purpose of furnishing a pretext to rescind the contract; and alleging and assuming to set forth a sufficient title to the property, evidenced^by possession as well as by writing, he resisted any relief to the plaintiff' beyond mere compensation in damages for the detention of part of the premises by Bently, and his non-compliance with the covenant to convey the property, and sought to compel a specific execution of the contract.
In April, 1866, Bently having failed to answer the petition, an order was entered, on motion of the plaintiff, *164 that the petition be taken for -confessed against him. And the court, having overruled a demurrer of the plaintiff to the answer of Alexander, sustained a motion made by him to transfer the case to the equity docket, to which the plaintiff excepted.
To the cross-petition of Alexander the plaintiff filed a reply, re-affirming the statements of his petition, and denying the .alleged collusion between him and Bently, and alleging that the property withheld by Bently was an essential part of the purchase, and the non-compliance of the defendants with their contract had destroyed all the inducements which caused him to make the purchase. And he therefore resisted a specific execution, and prayed for a rescission of the contract.
The petition was not amended; and the position of the plaintiff with reference to the execution or rescission of the contract was that of a resistant only, for he could not become an actor by a reply to a cross-petition or counterclaim; a reply being restricted to such denials or statements as constitute a defense only. (Civil Code, sec. 133.) And the validity of the title was not put in issue, unless it was by the following statement contained in an amended reply filed by the plaintiff: “He has not sufficient knowledge or information to constitute a belief that the title of defendants to the land sold plaintiff is perfect either by record or possessory title.”
In October, 1866, Bently filed his answer to the cross-petition of Alexander, concurring in the prayer for a specific execution of said contract, offering to surrender the possession of the land occupied by him, and tendering a conveyance of himself and wife to the plaintiff, in conjunction with Alexander and his wife, in execution of the contract.
It is not deemed necessary to make a moi’e minute or *165 extended statement of the pleadings in this ease. On a, final bearing of tbe cause tbe court adjudged a specific execution of tbe contract, so far as it could be executed, and tbat the plaintiff have compensation for tbe nonperformance of tbe covenants to convey and deliver possession by tbe defendants; and tbe plaintiff now seeks a reversal of tbat judgment.
Tbe following conclusions of fact may be deduced either from admissions of tbe pleadings or preponderating evidence:
1. Tbat although tbe land and its appurtenances occupied by Bently were valuable, tbe mills and tbe machinery and other property attached to them were greatly more valuable; and although tbe farm may have been used for some purposes in connection with tbe mills, tbe immediate use of it in tbat connection was not essential to tbe successful operating of tbe mills.
2. While it appears tbat tbe appellant urgently required a compliance with tbe contract on tbe part of tbe appellees by tbe delivery of tbe entire possession and conveyance of tbe title as soon as be was entitled to tbe same — and that be sold bis farm in a distant county with tbe intention of removing to and occupying the farm which was withheld by Bently — he afterward was willing to accept tbe conveyance, and allow Bently to remain in possession of tbe farm for some period of time as bis tenant for a reasonable rent.
3. Tbat after tbe appellant took possession of tbe mill property, and while it was in tbe possession of himself or tenants, tbe miller’s bouse, of considerable value, was accidentally burned, and tbe building, bolts, and machinery of tbe mills were damaged, and tbe property greatly deteriorated in value.
4. Tbe appellant approved of tbe deed from Alexander *166 and wife, but did not accept it as a sufficient conveyance of the property.
5. The notes of the appellant for the last two payments of two thousand five hundred dollars each were transferred by assignments to Lane and Foot; and Alexander has become a non-resident, and both he and Bently have become insolvent.
6. The title, though not perfect according to the muniments filed, is apparently assured by length of possession, and not menaced by the assertion of any adversary claim.
It is mainly insisted for the appellant that the judgment for a specific execution of the contract is inequitable and unauthorized because of the failure of the appellees to perform the reciprocal obligations devolved on them by the delivery of the entire possession, and conveyance of the title, until the circumstances which induced the purchase had so changed that a substantial performance of the contract on the part of the appellees had become impossible; and moreover, that the appellees had failed to exhibit such title as he ought to have been required to accept, especially in view of the irresponsible condition of the appellees. And on the other side it is argued that the rules of equity on which the objections of the appellant are founded are not applicable to this case for several reasons, the principal of which seems to bo that the appellant, approving of the title, accepted a partial execution by the other party; and, instead of asking a rescission in the original action, impliedly affirmed the contract by proceeding for the recovery of damages; and that in the mean time he placed it out of his power to put the appellees in statu quo by encumbering the property with leases, and permitting it to be so used that one of the houses was destroyed, and the residue of the property injured and impaired in value.
*167 These opposing positions of the parties are so counteractive of each other that inquiry may be properly made whether, under ordinary-circumstances, the grounds relied on by either party not himself in default would not be available in a court of equity. But in our opinion this case falls within the more comprehensive rule, as stated in Story’s Equity Jurisprudence, section 775, that “where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still, if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, and if compensation may be made for an injury occasioned by non-compliance with the strict terms, in all such cases courts of equity will interfere and decree a specific performance.”
Applying this equitable rule to, the facts of this case, it seems obvious that the court properly adjudged a performance of the contract if the title exhibited is reasonably sufficient; and it remains in the power of the court to enforce compensation to the appellant for the loss he may have sustained by the partial failure of the appellees to comply with the contract.
As has been shown, the issue — if any was sufficiently formed- — -as to the validity of the title was not in the original action, but on the cross-petition of Alexander; no defect of title being alleged by the plaintiff, but such a denial of knowledge or information on the subject being made by the reply as to call for an assurance of the title with reasonable certainty. This appears to have been done by the documentary and possessory evidence of title. It only remains therefore to determine whether, in the final adjustment of' these transactions, the court has power, notwithstanding the insolvency of the appellees, to compensate the appellant for the partial breach of the contract *168 by the appellees. This, it seems, may be done by setting off the amount of the damages against so much of the unpaid notes for purchase-money in the hands of the assignees of the appellees.
"Wherefore the judgment is affirmed.