RENDERED: DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0013-MR

JOANNA SMITH          APPELLANT

|   | APPEAL FROM CAMPBELL CIRCUIT COURT |
|---|---|
| v. | HONORABLE JULIE REINHARDT WARD, JUDGE |
|   | ACTION NO. 22-CI-00626 |

CITY OF NEWPORT AND
RAY EBERT          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE: On September 7, 2021, Joanna Smith tripped, fell, and

sustained consequent injuries while walking along the roadway, and a short

distance from the adjacent sidewalk, of James Alley in Newport, Kentucky. She

later filed suit in Campbell Circuit Court against the City of Newport and against

Ray Ebert, who is the Director of the City of Newport Public Works Division

(which is responsible for road and sidewalk maintenance). She alleged a defective condition of the roadway had caused her fall; and that because Newport and Ebert knew or should have known about the condition beforehand and had failed to remedy or warn her about it, Newport and Ebert were either negligent or negligent *per se* and thus liable for her injuries.

Following a period of discovery, Newport and Ebert moved for summary judgment, arguing they owed no duty to Smith actionable in negligence because Smith was a trespasser where she fell. Ebert also argued Smith's claims against him were otherwise barred by qualified immunity stemming from the Claims Against Local Governments Act (CALGA), Kentucky Revised Statutes (KRS) 65.2001 *et seq*. The circuit court ultimately granted their motion. This appeal followed. Upon review, we affirm. Additional facts relevant to our disposition will be set forth in our analysis.

## STANDARD OF REVIEW

Summary judgment should be cautiously applied and not used as a substitute for trial. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). It shall be rendered only where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil

-2-

Procedure (CR) 56.03. In considering a motion for summary judgment, a court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480.

On appeal, we must consider whether the trial court correctly determined that Smith could not have presented evidence at trial warranting a judgment in her favor. Because summary judgment involves only questions of law and not the resolution of disputed material facts, we need not defer to the trial court's decision. *Goldsmith v. Allied Bldg. Components. Inc.*, 833 S.W.2d 378 (Ky. 1992). Our review is *de novo*. *Id*.

## ANALYSIS

### 1. The appellees owed no actionable duty to Smith under the evidence presented.

Smith's claims of premises liability negligence required her to demonstrate the appellees owed her a duty of care, that the duty was breached, and that consequent injury followed. *See Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 906 (Ky. 2013). Because it is dispositive of this appeal, we begin with the circuit court's conclusion that the appellees owed no actionable duty to Smith because Smith was a trespasser where she fell. In *Shelton*, the Supreme Court of Kentucky set out the following guidance on how a court is to determine whether a duty exists in premises liability negligence cases:

The determination of whether a duty exists is a legal question for the court. In determining whether a duty exists, the court makes a policy decision. This policy decision is often not a "sophisticated weighing of probabilities" but "a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct."

. . .

Kentucky law remains steadfast in its adherence to the traditional notion that duty is associated with the status of the injured party as an invitee, licensee, or trespasser.

*Id.* at 908-09 (internal quotation marks, citations, and footnotes omitted).

As a matter of public policy, "[t]he owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted by the owner or someone acting for the owner." KRS 381.232; *see also Giuliani v. Guiler*, 951 S.W.2d 318, 321 (Ky. 1997) ("It is beyond challenge that public policy is determined by the constitution and the legislature through the enactment of statutes."). A "trespasser" is "any person who enters or goes upon the real estate of another without any right, lawful authority or invitation, either expressed or implied[.]" KRS 381.231(1).

By walking along the roadway of James Alley, Smith went "upon the real estate of another[.]" *Id.* Individual members of the public do not hold any kind of ownership interest in public ways; rather, "[t]he authorities of a municipal

-4-

corporation hold the public ways of the city in trust for the use of the public[.]" *Labry v. Gilmour*, 121 Ky. 367, 89 S.W. 231, 232 (1905). But, Smith argues she was not a trespasser per KRS 381.231(1) because she had a "right, lawful authority or invitation" to be where she injured herself. In support, she maintains that her status as a member of the public entitled her to use the roadway of James Alley, which has at all relevant times been a dedicated public way.[1] Building from that premise, Smith reasons she was entitled to legal protection against the appellees' allegedly negligent conduct, *i.e.*, their alleged failure to make James Alley safe for pedestrian travel. She therefore faults Newport and Ebert for failing to ensure the James Alley roadway conformed to Newport Code of Ordinances § 93.25, and ASTM[2]/ANSI[3] consensus safety standard F-1637-95 – two standards that explicitly apply to walkway surfaces for pedestrians. She also bases her negligence claims upon KRS 411.110, KRS 178.020, and KRS 411.182(2).

However, relative to any negligence claim, the plaintiff is required to demonstrate he or she was within the class of persons protected by the operative

---

[1] In her brief, Smith appears to make much of the fact that she was injured in James *Alley*, and that alleys are often different from *streets*. However, there is no legal difference between a public street and a public alley. Both are considered a public "highway" per KRS 189.010(3); and either may or may not have sidewalks. *See* KRS 189.010(10) (emphasis added) ("Roadway" means that *portion* of a *highway* improved, designed, or ordinarily used for *vehicular* travel[.]").

[2] American Society for Testing and Materials (ASTM).

[3] American National Standards Institute (ANSI).

duty.  *See, e.g.*, *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).  With that in mind,

we initially note that Smith cannot rely upon Newport's ordinance or the

ASTM/ANSI consensus safety standard as bases for her negligence *per se* claims

because neither qualifies as (or has been incorporated into) a Kentucky statute.  *See*

*Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008) ("Kentucky courts have

held that the 'any statute' language in KRS 446.070 is limited to Kentucky statutes

and does not extend to federal statutes and regulations or local ordinances.").  The

statutes she cites are also irrelevant to her claims:  KRS 411.110[4] merely suggests

that an action *can* be maintained against a city because of an injury growing out of

a defect in a public way; KRS 178.020[5] merely suggests that (county)

---

[4]  KRS 411.110 provides:

> No action shall be maintained against any city in this state because of any injury growing out of any defect in the condition of any bridge, street, sidewalk, alley or other public thoroughfare, unless notice has been given to the mayor, city clerk or clerk of the board of aldermen in the manner provided for the service of notice in actions in the Rules of Civil Procedure.  This notice shall be filed within ninety (90) days of the occurrence for which damage is claimed, stating the time of and place where the injury was received and the character and circumstances of the injury, and that the person injured will claim damages therefor from the city.

[5]  KRS 178.020 provides:

> Every county road, bridge, and landing, and every city street and alley heretofore lawfully established and opened and not lawfully discontinued or vacated shall continue as such, until properly discontinued.  Every road, street, and alley, used and occupied as a public road, street, or alley, shall be presumed to be a public road, street, or alley, as the case may be.  Nothing in this section shall be interpreted as interfering with the right of the fiscal court of a county containing a city of the first class or a consolidated local government from detaching a road or a portion thereof from the county through road system.

thoroughfares used and occupied as public ways are presumptively public ways; and KRS 411.182(2)[6] merely codifies the doctrine of comparative fault – a doctrine that has no application if there is no actionable fault to compare.

Contrary to the underlying thesis of Smith's argument, no rule of law entitles the public to use public ways any way the public chooses. Rather, municipalities must rightfully exercise a great deal of control over the use of public ways in the interest of traffic regulation and public safety. *See Shuttleworth v. City of Birmingham*, 394 U.S. 147, 152, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969). One way a municipality exercises control over the use of public ways is by providing sidewalks. To that end, KRS 189.570(12) states: "Where a sidewalk is provided and its use is practicable, it shall be *unlawful* for any pedestrian to walk along and upon an adjacent roadway." (Emphasis added.) Stated differently, where a sidewalk is provided and its use is practicable, there is no "right, lawful authority or invitation" for a pedestrian to walk along the adjacent roadway. Thus, when a pedestrian nevertheless does so, he or she is a "trespasser" within the meaning of KRS 381.231(1).[7]

---

[6] KRS 411.182(2) provides:

> In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

[7] Under the circumstances of this case, the only "invitation" that could have been extended to Smith to walk along the roadway of James Alley was required to conform with KRS

As noted, there was a sidewalk next to where Smith fell. Consequently, the dispositive issue for purposes of this case is whether Smith responded to the appellees' motion for summary judgment by adducing evidence supporting it was not "practicable," per KRS 189.570(12), for her to have used the sidewalk of James Alley, rather than the roadway, at the time of her fall. "Practicable" is not a defined term in KRS Chapter 189, so its common definition applies in this context: "[R]easonably capable of being accomplished[.]" BLACK'S LAW DICTIONARY 1191 (7th Ed. 1999). The word "reasonably" denotes an objective standard. *See Wilson v. Commonwealth*, 628 S.W.3d 132, 143 (Ky. 2021).

Here, when deposed, Smith was presented with a photograph that she testified accurately represented the location of her fall and the condition of that location when she fell. The photograph depicts an asphalt roadway. In two places each perhaps three feet in diameter, it appears a roughly one-inch-thick layer of asphalt is missing, exposing the underlying brickwork of the roadway. One of those places is circled on the photograph. Smith testified something in the circled area caused her to trip and fall; she could not specifically recall what because she was not paying attention. To the left of the direction Smith had been walking, and

189.570(12). We hasten to add, however, that there are many instances where the law otherwise provides "invitations" for pedestrians to walk in roadways, including but not limited to those specified in KRS 189.570(6) (crosswalks), (13) (shoulders), and (14) (on the left side of a road that has no sidewalk).

-8-

a short distance from that circled area, was the adjacent sidewalk. The sidewalk appears to be about three feet wide and extends from at least where the photographer is standing (several feet in front of the circled area) to the end of the city block (perhaps two dozen feet beyond the circled area). A few thin cracks web the edge of the sidewalk near the circled area. Several feet further into the distance, a small downspout, bolted to the side of a building, protrudes approximately half a foot onto the right side of the sidewalk. All told, the sidewalk has no notable defects or obstructions.

Indeed, when asked why she and her friends had chosen to walk in the roadway of James Alley, rather than the sidewalk, Smith did not state that any defect or obstruction prevented her from using the sidewalk. She simply testified as follows:

> SMITH: We just didn't use it. It ends at a certain point as well. It don't go all the way down the alley. It's just a little tiny area. They, I mean, it's not very long.
>
> Q: Okay. So instead of walking the sidewalk to the end and getting in the street, the three of you just walked the street the whole way?
>
> SMITH: We were just talking and walking.

This leads to why the circuit court determined Smith's negligence claims failed as a matter of law. Smith adduced nothing the circuit court regarded as evidence objectively demonstrating she was incapable of using the sidewalk

rather than the roadway in the location of her fall. It held, therefore, that Smith was a trespasser in that location, rather than an invitee. *See* KRS 189.570(12); KRS 381.231(1). And, because Smith made no contention that her injuries stemmed from any kind of intentional act from Newport or Newport's agents, Newport and its agents breached no actionable duty owed to Smith under the circumstances. *See* KRS 381.232.

On appeal, Smith claims she *did* adduce evidence objectively demonstrating she was incapable of using the sidewalk rather than the roadway, and that the circuit court erroneously discounted it. To that effect, Smith presents the following. First, she notes that in her response to the appellees' motion for summary judgment, her attorney argued that using the sidewalk adjacent to where she fell would have been hazardous. In support, her attorney attached fourteen additional photographs to her response to the appellees' motion for summary judgment; and her attorney asserted those additional photographs depicted locations in James Alley where – in addition to the roadway – the condition of the sidewalk *also* violated Newport Code of Ordinances § 93.25, and ASTM/ANSI consensus safety standard F-1637-95.

However, the beliefs and arguments of Smith's attorney are not evidence. *See Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009). As indicated previously, Newport Code of Ordinances § 93.25 and ASTM/ANSI

consensus safety standard F-1637-95 have not been incorporated into any Kentucky statute, and thus cannot support Smith's negligence *per se* claim. Further, having reviewed the photographs in question, we agree with the circuit court's assessment that it would be speculation, conjecture, or guesswork to infer that using the sidewalk near the site of Smith's fall would have been impracticable. Of the fourteen photographs, only six appear to depict any part of the sidewalk in James Alley; and of those, none features any notable defects or obstructions. As set forth in its September 19, 2023 order of summary judgment:

> While there are measurements shown within the photographs, they are cropped in such a way that it is difficult for the Court to discern what the photographer is trying to convey. Plaintiff's counsel argues that the photograph[s] reflect that the sidewalk is not within code, but there is no evidence supporting that argument. Therefore, the Court cannot consider these photographs as evidence in support of Plaintiff's Response.

Second, Smith notes that in a post-judgment discovery filing, she sought to designate her then-fiancé, Kevin Whitaker, as an expert capable of rendering opinions about whether sidewalks are practicable to traverse; and that contemporaneously with a post-judgment CR 59.05 motion, she tendered an affidavit from Whitaker that (1) "authenticated"[8] the several photographs that her

---

[8] An issue arose below regarding whether the photographs in question were properly "authenticated" per Kentucky Rule of Evidence 901, and thus even proper for the circuit court to consider "admissible evidence" for summary judgment purposes. *See Walker v. Commonwealth*, 503 S.W.3d 165, 177 (Ky. App. 2016) (citations omitted) ("Evidence presented in opposition to

-11-

attorney had previously relied upon; and (2) expressed Whitaker's "expert" opinion based upon those photographs that the condition of the sidewalk near the location of Smith's fall violated Newport Code of Ordinances § 93.25 and ASTM/ANSI consensus safety standard F-1637-95, and thus indicated Newport and Ebert violated the "ordinary care" standard applicable to Smith's common law negligence claims.

However, even if Whitaker's authentications of the photographs and "expert" opinion could have added evidentiary support to Smith's case (and they did not), Smith added that evidence to the record too late. Smith offers no excuse for her failure to present that evidence before the circuit court dismissed her case; and CR 59.05 does not permit disappointed litigants to raise arguments and adduce evidence that could and should have been raised prior to the entry of an offending judgment as a basis for setting that judgment aside. *See Hopkins v. Ratliff*, 957 S.W.2d 300, 301 (Ky. App. 1997). In sum, Smith failed to demonstrate the appellees breached any actionable duty owed to her under the circumstances presented in this case. The circuit court correctly dismissed on that basis.

a motion for summary judgment must be affirmative and it must be admissible."). The circuit court determined the photographs were improper to consider because they were not authenticated – which prompted Smith to file the post-judgment "authentication" affidavit from Whitaker. Alternatively, however, it found the photographs too speculative to qualify as evidence in support of Smith's claims. Because we agree with the circuit court's latter conclusion, any discussion of its former conclusion is unnecessary.

**2.  It is unnecessary to address whether Ebert was alternatively entitled to qualified immunity.**

Smith argues the circuit court erred in determining Ebert was qualifiedly immune from her negligence actions because, in her view, Ebert breached a "ministerial duty" to maintain the roadway of James Alley and thus "ensure" it remained safe for pedestrian travel.

Parenthetically, we note that "[a] city is not an insurer of the safety of its streets; therefore it is not liable for consequences of an accident to one using them, unless they are not reasonably safe, and this condition was the result of a failure of the municipality to exercise *ordinary care* so to maintain them." *Fiechter v. City of Corbin*, 254 Ky. 178, 71 S.W.2d 423, 427 (1934) (emphasis added) (citation omitted); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002) (emphasis in original) ("What Kentucky courts have recognized through the 'universal duty of care' rule is that the existence of a duty of care is circumstantially limited:  the duty is to exercise ordinary care to prevent *foreseeable* harm.").

Also, absent actual or perhaps constructive knowledge of a hazardous condition, a public official's duty of inspection is generally regarded as discretionary, not ministerial.  *See, e.g.*, *Commonwealth, Transp. Cabinet v. Sexton*, 256 S.W.3d 29 (Ky. 2008) (holding the inspection and removal of trees is a discretionary act so long as the state entity lacks actual notice of the existence of a

-13-

dangerous or hazardous tree); *Burns v. Aistrop*, 694 S.W.3d 390 (Ky. App. 2024) (based on the evidence presented, the Director of Louisville Metro Public Works, who was responsible for overseeing sidewalk maintenance, owed only a discretionary duty to inspect and repair sidewalks); *see also* KRS 65.2003(3)(e) (providing immunity for the breach of a discretionary duty to inspect). Further, absent a showing of bad faith, city officials are entitled to CALGA immunity in the performance of their discretionary duties. *See Aistrop*, 694 S.W.3d 390; *see also Godman v. City of Fort Wright*, 234 S.W.3d 362, 370 (Ky. App. 2007) (citing CALGA as a basis for extending qualified immunity to city officials).

That said, a discussion of Ebert's CALGA-based qualified immunity is not germane to our analysis because immunity is considered a confession and avoidance; and, absent any actionable duty owed to Smith, Ebert had nothing below to either confess or avoid. *See Kirby v. Lexington Theological Seminary*, 426 S.W.3d 597, 608 (Ky. 2014) ("[Q]ualified immunity . . . [is] a type of pleading dealing in confession and avoidance, *i.e.*, pleading 'more or less to admit the general complaint and yet to suggest some other reason why there was no right . . .'" (citation omitted)). As such, we will not address this point further.

**CONCLUSION**

Considering the foregoing, we affirm.

-14-

ALL CONCUR.


BRIEFS FOR APPELLANT:

Robert E. Blau
Erin M. Melcher Beam
Cold Spring, Kentucky

BRIEF FOR APPELLEES:

Jeffrey C. Mando
Covington, Kentucky